**UNITED STATES of America,**
**Appellee,**

**v.**

**Guido IOZZI, Jr., Appellant.**

**No. 13455.**

United States Court of Appeals
Fourth Circuit.

Argued Dec. 3, 1969.

Decided Jan. 12, 1970.

Owen P. O'Donnell, San Francisco, Cal. (Melvin M. Belli, and Belli, Ashe, Ellison, Choulos & Lieff, San Francisco, Cal., on brief) for appellant.

Donald E. Sharpe, Special Asst. U. S. Atty. (Stephen H. Sachs, U. S. Atty., on brief) for appellee.

Before SOBELOFF, BRYAN, and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge.

Guido Iozzi, Jr., was convicted on six counts of an indictment that charged violation of the Hobbs Act [1] and the Taft-Hartley Act.[2] We find in his numerous assignments of error no cause for reversal. Only two of the issues he raises require discussion. The others we affirm summarily upon consideration of the briefs, record, and oral argument.

### I.

Iozzi asserts that the district court erred by denying his motion for a judgment of acquittal on the ground that the evidence was insufficient to support a verdict of guilty on Counts 1, 3, and 5 charging violation of the Hobbs Act. With respect to these counts, the government needed to introduce sufficient proof to establish that Iozzi obtained or attempted to obtain money from building contractors with their consent by causing the contractors to fear financial and economic loss if they did not pay him, and that in doing so Iozzi obstructed, delayed, or affected interstate commerce. There is no need to recite all

---

1. Title 18 U.S.C. § 1951 provides in part:

"(a) Whoever * * * obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by * * * extortion or attempts * * * so to do * * * in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

"(b) As used in this section—

* * * * *

"(2) The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

2. Title 29 U.S.C. § 186 provides in part:

"(a) It shall be unlawful for any employer * * * or any person * * * who acts in the interest of an employer to pay * * * any money or other thing of value—

"(1) to any representative of any of his employees * * *.

"(b) (1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a) of this section."

of the facts. Substantial evidence, viewed in the light most favorable to the government, tends to show Iozzi's guilt beyond a reasonable doubt. Accordingly, the district judge properly denied the motion for a judgment of acquittal. Bell v. United States, 185 F.2d 302, 310 (4th Cir.), cert. denied, 340 U.S. 930, 71 S.Ct. 492, 95 L.Ed. 671 (1951).

Iozzi was President of the Baltimore Building and Construction Trade Council, an association of some 25 local building trade unions. He used his position to foster the impression that he had sufficient power to slow down or stop construction projects unless his demands were met. With respect to Count 1, the evidence is clear that Iozzi demanded and received $10,000 in cash from the president of Morrow Brothers Construction Co. With regard to Count 3, he demanded, but did not receive, $20,000 from Ames-Ennis, Inc., another general contractor. Iozzi dismisses these instances as simply garden variety bribery to permit the use of nonunion labor by Morrow Brothers on a project at Johns Hopkins University and by Ames-Ennis on the construction of the Baltimore Women's Detention Center. Work stoppages and picketing on the contractors' other jobs, he asserts, had nothing to do with his demands for money, but, on the contrary, were designed to persuade the contractors to sign a new Building Trades Agreement. Iozzi, however, never explained this nice distinction to his victims. They quite justifiably believed that their difficulties with labor, Iozzi's demands for cash, and his insistence that they sign a new labor agreement were inextricably mixed. The evidence discloses that Iozzi forcefully drove home the point that the alternative to the contractors' financial and economic loss was payment of the tribute he levied. His conduct transgressed the bounds of legitimate labor tactics and violated the Hobbs Act. United States v. Provenzano, 334 F.2d 678 (3d Cir.), cert. denied, 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544

(1964); United States v. Postma, 242 F.2d 488 (2d Cir.), cert. denied, 354 U.S. 922, 77 S.Ct. 1381, 1 L.Ed.2d 1436 (1957); Bianchi v. United States, 219 F.2d 182 (8th Cir.), cert. denied, 349 U.S. 915, 75 S.Ct. 604, 99 L.Ed. 1249 (1955).

■ Count 5 involved the payment of $3,000 so construction of an office building in Towson, Maryland, could proceed. Walter Skopp, business manager of a local union of electrical workers, conducted the negotiations and made the demands for payment. He represented that he was acting for Iozzi, and that unless payment was received, the Mafia, with whom he said Iozzi was linked, would sabotage the job. Iozzi claims the evidence was insufficient to show that Skopp was his agent or that he authorized Skopp's extortion. The facts, however, do not sustain this claim. On one occasion Iozzi visited the job site, revealed that he was familiar with the labor problems and threatened more difficulties. When the payoff was made in cash through an intermediary, Iozzi appeared at the rendevouz with Skopp. Significantly, it was Iozzi, not Skopp, who pocketed the money and sent back a message through the intermediary that he, Iozzi, was not going to be bought by chicken feed like $3,000. Iozzi's receipt of the fruits of Skopp's extortion gives credence to the government's assertion that Skopp was Iozzi's agent. As Judge Learned Hand said of a similar situation, "There may be honor among thieves, but there is no maudlin munificence." United States v. Compagna, 146 F.2d 524, 530 (2d Cir. 1944), cert. denied, 324 U.S. 867, 65 S.Ct. 912, 89 L.Ed. 1422 (1945).

■ Count 6 charges a violation of the Taft-Hartley Act by Iozzi's acceptance of $3,000 from Allen & Whalen, Inc.[3] The Act makes unlawful all payments, with exceptions not pertinent here, from an employer to union officials. Iozzi contends that the evidence was insufficient to show that the payment was

---

3. Counts 5 (Hobbs Act) and 6 (Taft-Hartley Act) charged receipt of the same $3,000.

made by an employer. The proof disclosed that $3,000 was drawn in cash from the bank account of Investment Building Joint Venture, the owner of the building under construction. There is, however, no evidence that the joint venture was an employer. Cornelius Whalen, the principal investor in the joint venture, sent the cash to Iozzi. If this were all the government's evidence, Iozzi's contention might well have merit. But the proof also established that Cornelius Whalen was president of Allen & Whalen, Inc., the electrical contractor on the job. Skopp, the business manager of the local union of electrical workers, who arranged for the payoff from Cornelius Whalen to Iozzi, alluded to difficulties that Allen & Whalen, Inc., which operated a union shop, might encounter, as well as to sabotage of the job in general. Skopp and Iozzi were not concerned with the source of the cash. Their demands were made to Cornelius Whalen, whom they knew to be both a part-owner of the building and president of Allen & Whalen, Inc., an employer of workmen they represented. They also knew he was the person who sent the cash. The Act does not require the government to show that the money paid to a union representative came from the employer's funds. On the contrary, it prohibits receipt of money from any person acting in the interest of an employer.[4] Iozzi's guilt, therefore, was established by evidence from which the jury could find that he, knowing Cornelius Whalen was acting in the interest of the employer as well as the owner, nevertheless received money from Whalen.

## II.

[6–8] Iozzi also complains that Counts 1, 3, and 5 charged extortion through wrongful use of fear of financial and economic injury to the contractors' business, but that the proof showed threats of violence and force. This, Iozzi claims, constituted a fatal variance between the indictment and the proof. There is no suggestion that the evidence surprised Iozzi's lawyer, for through a bill of particulars and other pretrial proceedings, the government disclosed the nature of its case. Rather, Iozzi contends that the variance erodes the distinction between the ways a person may violate the Hobbs Act. Under the Act's definition, extortion can be committed by (1) force, (2) violence, (3) fear, and (4) under color of official right.[5] Fear of economic loss is sufficient to support a conviction under the Act. United States v. Dale, 223 F.2d 181, 182 (7th Cir. 1955). And since the proof must show that the victim's fear was reasonable, United States v. Tolub, 309 F.2d 286 (2d Cir. 1962), the government is not precluded from showing why he feared economic harm. The causes of fear are not restricted or qualified by the Act, Bianchi v. United States, 219 F.2d 182, 189 (8th Cir.), cert. denied, 349 U.S. 915, 75 S.Ct. 604, 99 L.Ed. 1249 (1955), and no case excludes from coverage of the Act fear of economic injury resulting from threat of force or violence to a person's business property or employees. Consequently, we hold that obtaining money through the fear of economic injury induced by threats of violence or force constitutes extortion under the Act. We find, therefore, no fatal variance between the charge and the proof.

Iozzi's reliance on Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), is misplaced. There the Hobbs Act indictment charged interference with commerce by obstructing shipments of sand into the state for a ready-mix concrete plant. But the trial court instructed the jury that guilt could rest on obstruction of shipments of steel from a mill being built with the concrete. The Supreme Court reversed because the defendant had been convicted upon a charge which had not been returned by the grand jury. Here, on the contrary, the court carefully followed the

---

4. Title 29 U.S.C. § 186(a) and (b), see n. 2, supra.

5. 18 U.S.C. § 1951(b) (2) ; see n. 1, supra.

language of the indictment in charging the jury that in order to convict, it was essential for the government to show that Iozzi obtained money, or attempted to do so, through the wrongful use of fear of financial and economic injury to the contractors' businesses. We find, therefore, no deprivation of Iozzi's constitutional right to indictment by a grand jury.

The judgment is

Affirmed.