UNITED STATES of America,
Plaintiff-Appellee,

v.

Joseph D. CUSMANO,
Defendant-Appellant.

No. 79–5364.

United States Court of Appeals,
Sixth Circuit.

Argued April 17, 1981.

Decided and Filed Sept. 17, 1981.

Neil H. Fink, Detroit, Mich., for defendant-appellant.

James K. Robinson, U. S. Atty., John Newcomer, Detroit, Mich., for plaintiff-appellee.

Before LIVELY, KENNEDY, and BOYCE F. MARTIN, Jr., Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Joseph Cusmano was convicted in the Eastern District of Michigan of both conspiracy to violate and a substantive violation of the Hobbs Act, 18 U.S.C. § 1951.[1]

---

1. The Hobbs Act provides, in pertinent part:
   (a) Whoever in any way or degree obstructs, delays, or affects commerce or the

movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or

Cusmano was the founder and half owner, along with codefendant James Russo, of the J & J Cartage Company, a trucking firm engaged in the transportation of steel. The other codefendants were Vincent Meli, an employee of the company, and Roby Smith, the business agent for Teamsters Local 299. The indictment charged that Cusmano, Russo, Meli, and Smith conspired to and did in fact obstruct, delay, and affect interstate commerce through extortion.[2] The codefendants allegedly coerced the drivers to pay the company's contributions to the Teamster Health and Welfare and Pension Funds by causing them to sign a so-called "11% agreement." The agreement authorized the company to deduct 11% from gross earnings, prior to computing the drivers' wages, and to use the deducted amount to pay the employer contributions to the funds.

Cusmano makes several arguments on appeal. We only address one of those arguments, because our decision on the issue it raises requires us to reverse his conviction.

Cusmano contends that certain evidence admitted at trial, together with the trial court's instructions to the jury, constituted a constructive amendment of the indictment, depriving him of his Fifth Amendment right not to be prosecuted except on charges set forth in a grand jury indictment. We agree.

Count One of the indictment stated as follows:

[The codefendants] did knowingly and willfully conspire, combine, confederate and agree together, and with each other, and with persons unknown to the Grand Jury, to obstruct, delay and affect interstate commerce, as that term is defined in Section 1951 of Title 18, United States

Code, and the movement of articles and commodities, that is, steel and steel products, in such commerce, and did attempt to do so by extortion, to-wit: by threats of economic loss, that is to say, the defendants did force the drivers who were employees, agents, and owner-operators of the Company to pay the Company employer contributions to the Funds with their consent induced by the wrongful use of force and fear, in that the defendants did threaten certain drivers of the Company with unprofitable truck loads, the loss of their jobs, and the loss of equity in their equipment unless they agreed to the deduction from their weekly gross earnings.[3]

It is clear that the indictment alleges only one means of extortion: threats of economic loss. The "wrongful use of force and fear" constituting the extortion element of the offense is particularized—the drivers were threatened with unprofitable loads, the loss of their jobs, and the loss of equity in their equipment. There is no allegation that the employees' consent to the 11% agreement was induced by the wrongful use of actual or threatened physical violence. Such conduct is not a necessary element of a Hobbs Act conviction; it is well settled that fear of economic loss is sufficient to support a conviction under the Act. *See United States v. Enmons*, 410 U.S. 396, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973); *United States v. Brecht*, 540 F.2d 45 (2nd Cir. 1976), *cert. denied*, 429 U.S. 1123, 97 S.Ct. 1160, 51 L.Ed.2d 573 (1977); *United States v. Addonizio*, 451 F.2d 49 (3rd Cir.), *cert. denied*, 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972).

As the government points out in its brief, however, fear of economic loss was not the

---

threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

(b) As used in this section—

    \*    \*    \*    \*    \*    \*

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or

threatened force, violence, or fear, or under color of official right.

**2.** Cusmano's motion to sever was granted, and he was tried first. His codefendants have since been convicted on both counts, and their appeals are pending in this court.

**3.** Count Two of the indictment alleged the same conduct as a substantive offense.

only kind of fear that the witnesses were permitted to describe. Evidence was admitted at trial of the employees' fear of physical violence as well. John Gemelli, one of the truck drivers, testified that he had heard that codefendant Meli was involved in the Mafia and was not one to "fool around" with. Gemelli also stated that he was concerned for his family, and that his mother-in-law had received a threatening phone call. Cusmano moved during Gemelli's testimony for a mistrial, and in a supporting memorandum contended that the evidence as to Meli's character was inadmissible, highly prejudicial, and irrelevant to prove the fear of economic harm alleged in the indictment. In its opinion denying the motion, the trial court first stated that it would give a cautionary instruction. Addressing Cusmano's claim that the evidence was irrelevant, the court stated:

> First, a reference to Meli as an affiliate of the "Mafia" does not necessarily connote solely a "physical" threat—it may well convey the ability to enforce an economic threat, perhaps through physical means, perhaps through commercial means. The court deems the information probative since it may assist the jury in their determination of whether there existed in the witness' mind a reasonable fear of economic loss. The fear in the mind of the alleged victim may be a product of potential economic loss, potential physical harm, or a hybrid of the two. Second, the court does not find that the proofs are fatally variant from the charges of the indictment. *See, United States v. Mills*, 366 F.2d 512, 514 (6th Cir.

1966). The defendant in this case has been afforded substantial discovery, thereby minimizing the potential for surprise or for being misled. In the leading case on fatal variance, *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), the prosecution relied on facts at trial that were much different from those enumerated in the indictment. Such is not the case here. It is conceivable here that the existence of fear in the alleged victim's mind was related to economic loss as well as physical harm—under certain circumstances it is apparent that the two forms of coercion may be inextricably tied. *That is not to say that the government will be allowed to prove a case of extortion by physical threats, which was not charged in the indictment.* It is difficult for the court, at this time, to foresee what proofs are forthcoming. Hopefully, the aforementioned rationale will assist the government in recognizing their limitations. For the foregoing reasons, the defendant's motion for a mistrial is hereby denied.

(Emphasis added).

It is clear that at this point in the trial the court intended to limit the government's proof to the charges set forth in the indictment. The trial judge obviously believed that the evidence of Meli's Mafia connection connoted a threat of physical violence. He cautioned the jury to consider that evidence only as it bore on Gemelli's state of mind. The court reasoned that the evidence would assist the jury in determining whether there existed in Gemelli's mind a reasonable fear of *economic* loss.[4]

---

4. In addition to the testimony of Gemelli, there was other evidence of threats of physical violence, admitted to show the state of mind of the J & J Cartage employees.

Carl Ottman, another driver, testified that Meli's reputation had a bearing on Ottman's decision to sign the 11% agreement. He stated that Meli represented the "muscle" of the company, available "to enforce anything that they wanted to impose upon the drivers."

Perhaps the most significant testimony relating to the employees' fear of physical violence was the testimony of James Morisette, a former business agent of the union. Morisette's job was to collect contributions to the union pen-

sion and health and welfare funds from employers whose accounts were delinquent, and to collect union dues. One of the companies to which Morisette was assigned was J & J Cartage. Sometime around April of 1972 he was assigned to other companies, and his duties with respect to J & J Cartage were assigned to Roby Smith, one of Cusmano's codefendants in this case.

Morisette testified that while he was the business agent assigned to J & J, he encouraged employees who had complaints to submit written grievances to the union, but no grievances were filed. Morisette said that later, apparently after he ceased being the business

In contradiction to its earlier statement that the government would not be allowed to prove a case of extortion by physical threats, the court gave the following instructions to the jury:

Now, as to the second element of the Hobbs Act violation, that is, the use of extortion, I instruct you that the law as it relates to this case defines extortion as the obtaining of property from another with his consent, where that consent was induced by the wrongful use of threatened force, violence, or fear. The mere taking of property not induced by these fears would not constitute extortion.

\* \* \* \* \* \*

The term "fear" as used in these instructions has the commonly accepted meaning. It is a state of anxious concern, alarm, or apprehension of anticipated harm. The term "fear" as used in these instructions not only encompasses fear of economic loss or damage to certain employee drivers of J & J Cartage Company but also fear of physical violence.

Thus, if the defendants deliberately and intentionally played upon an individual's reasonable fear of force, violence, or economic loss to obtain money from that person or persons the defendants have committed extortion.

\* \* \* \* \* \*

In connection with what I have just said about extortion through the use of fear, I instruct you that if you, ladies and gentlemen, find beyond a reasonable doubt that the defendant deliberately and intentionally utilized another person's reasonable fear of actual or threatened force or violence, or of economic loss, to obtain property from that person, extortion has been committed.

\* \* \* \* \* \*

Keep in mind in deciding the issues it is the burden of the Government to prove the defendant's guilt beyond a reasonable doubt. In order to prove the defendant's guilt the Government must also prove beyond a reasonable doubt that the defendant attempted to obtain the property by threats of force or violence or fear of economic harm.[5, 6]

Except as to matters of form or surplusage, there is a per se rule prohibiting judicial amendments to the terms of an indictment. *Watson v. Jago*, 558 F.2d 330, 334 (6th Cir. 1977); *United States v. Fruehauf*, 577 F.2d 1038, 1056 (6th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 349, 58

agent assigned to J & J Cartage, he talked with former J & J drivers about why grievances were never filed. The reason they gave was that a lot of them were threatened, and that none wanted to have his "head busted." In its closing argument, the government stated that Morisette's testimony helped "to show you what the atmosphere was [at J & J Cartage] as far back as early 1972."

Michael Pomper, a driver, testified that he was dissatisfied with the provisions of the 11% agreement. He asked his attorney to check into the agreement. The attorney's initial response was that he could not believe that J & J Cartage was trying to do this to the drivers, and that he felt Pomper had a good case. However, a week or two later, the attorney called Pomper back, and according to Pomper, "what he said was that I didn't tell him Vince Meli was working there, and there was nothing he could do for me."

**5.** Cusmano objected to these instructions, and to the court's failure to give Defendant's Proposed Jury Instruction # 32, which provided:

It is stated in the indictment that the alleged extortion was committed solely by means of threats of economic loss, namely, that the drivers would be given unprofitable loads, lose their jobs and the loss of equity in their equipment unless they agreed to the deduction of eleven percent from their gross earnings.

Accordingly, if you conclude that threats of another nature were made, you are to disregard such evidence as it is irrelevant to the charges. *United States v. Addonizio*, 451 F.2d 49 (3rd Cir. 1972), *cert. denied*, 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972), *reh. denied*, 405 U.S. 1048, 92 S.Ct. 1309, 31 L.Ed.2d 591 (1972).

**6.** There are segments of the court's instructions which are consistent with the allegations of the indictment. *See* App. 629, 630, 621, 634, 637. However, we feel that, viewed as a whole, the charge left the jury with the impression that a finding of extortion could be based on a finding of threats of physical violence alone—extortive means not alleged in the indictment. "

L.Ed.2d 344 (1978); *United States v. Beeler,* 587 F.2d 340, 342 (6th Cir. 1978). The rule began as a prohibition of formal alterations of the wording of an indictment. *See Ex Parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887). In *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), the Supreme Court held that events at trial can effectively amend an indictment, requiring reversal of a conviction even in the absence of a formal amendment. The *Stirone* indictment alleged a Hobbs Act violation which affected the movement of sand in interstate commerce. Over the defendant's objection, the trial court allowed the government to present evidence of an effect on interstate commerce in steel as well as in sand. The jury was instructed that interference with interstate shipments in either sand or steel could constitute the interstate element of the offense. In reversing the Court of Appeals' affirmance of Stirone's conviction, the Supreme Court wrote:

> The *Bain* case, which has never been disapproved, stands for the rule that a court cannot permit a defendant to be tried on charges that are not made in the indictment against him. See also *United States v. Norris,* 281 U.S. 619, 622, 50 S.Ct. 424, 425, 74 L.Ed. 1076. *Cf. Clyatt v. United States,* 197 U.S. 207, 219, 220, 25 S.Ct. 429, 432, 49 L.Ed. 726. Yet the court did permit that in this case. The indictment here cannot fairly be read as charging interference with movements of steel from Pennsylvania to other States nor does the Court of Appeals appear to have so read it. The grand jury which found this indictment was satisfied to charge that Stirone's conduct interfered with interstate importation of sand. But neither this nor any other court can know that the grand jury would have been willing to charge that Stirone's conduct would interfere with interstate exportation of steel from a mill later to be built with Rider's concrete. And it cannot be said with certainty that with a new basis for conviction added, Stirone was convicted solely on the charge made in the indictment the grand jury returned. Al-

though the trial court did not permit a formal amendment of the indictment, the effect of what it did was the same. And the addition charging interference with steel exports here is neither trivial, useless, nor innocuous. Compare *Ford v. United States,* 273 U.S. 593, 602, 47 S.Ct. 531, 534, 71 L.Ed. 793; *Goto v. Lane,* 265 U.S. 393, 402, 44 S.Ct. 525, 527, 68 L.Ed. 1070. While there was a variance in the sense of a variation between pleading and proof, that variation here destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury. Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error. Compare *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314. The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge. Thus the basic protection the grand jury was designed to afford is defeated by a device or method which subjects the defendant to prosecution for interference with interstate commerce which the grand jury did not charge.

*Id.,* 361 U.S. at 217–18, 80 S.Ct. at 273–74 (footnote omitted).

This court has adopted the District of Columbia Circuit's test for distinguishing between constructive amendments to an indictment and mere variances in proof:

> An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them. A *variance* occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment.

*Gaither v. United States,* 134 U.S.App.D.C. 154, 413 F.2d 1061, 1071 (1969). *See United*

*States v. Fruehauf Corp., supra,* at 1056; *Watson v. Jago, supra,* at 334.[7]

■ The events at Cusmano's trial effectively altered the charging terms of the indictment, thus destroying his right to be tried only on the charges set forth in the indictment. As the Supreme Court pointed out in *Stirone, supra,* 361 U.S. at 218, 80 S.Ct. at 273, there are two essential elements of a Hobbs Act crime: interference with commerce and extortion. "Neither is surplusage and neither can be treated as surplusage." *Id.* It follows that when one means of extortion is charged, a conviction must rest on that charge and not another, even if it is assumed that under an indictment drawn in general terms a conviction might rest upon a showing of either form of extortion. *Cf. Stirone, supra,* 361 U.S. at 218, 80 S.Ct. at 273. We cannot know whether the grand jury would have included in its indictment an allegation of extortion through threats of physical violence. The admission of evidence of such extortion, together with the trial court's instructions, indicate that this might have been the basis of Cusmano's conviction. If so, he was convicted on charges the grand jury never made against him. This was fatal error. *Id.* at 219,[8] 80 S.Ct. at 274. *See also United States v. Jones,* 647 F.2d 696 (6th Cir. 1981); *United States v. Wood,* 609 F.2d 246 (6th Cir. 1979).

The judgment of the District Court is therefore reversed.

CORNELIA G. KENNEDY, Circuit Judge, dissenting.

I respectfully dissent. Assuming that the majority is correct in holding that the charge to the jury does not accurately reflect the indictment, I would hold that permitting the jury to convict if it found that defendant used threats of physical harm did not so change the basic theory of the alleged conspiratorial agreement as to constitute an amendment. Our Circuit has stated the purposes underlying the rule against constructive amendments: notice to the defendant of the charges he will face at trial; notice to the court so it may determine whether the facts alleged are sufficient to support a conviction; prevention of further prosecution for the same offense; the assurance that a group of independent citizens have reviewed the allegations and determined that there is enough of a case to send to the jury. *United States v. Beeler,* 587 F.2d 340, 342 (6th Cir. 1978). The crime charged in the indictment, particularly with respect to the conspiracy, was the same as described in the charge to the jury. As the United States Supreme Court stated in *Glasser v. United States,* 315 U.S. 60, 66, 62 S.Ct. 457, 463, 86 L.Ed. 680 (1942):

---

**7.** *See also United States v. Beeler, supra,* which articulated the following test: "Variances which create 'a substantial likelihood' that a defendant may have been 'convicted of an offense other than that charged by the grand jury' constitute constructive amendments . . . . *United States v. Somers,* 496 F.2d 723, 744 (3rd Cir. 1974)." 587 F.2d at 342.

**8.** The government, citing *United States v. Iozzi,* 420 F.2d 512 (4th Cir. 1970), *cert. denied,* 402 U.S. 943, 91 S.Ct. 1607, 29 L.Ed.2d 111 (1971), asserts that there was no fatal variance in this case. The *Iozzi* indictment charged extortion through the wrongful use of fear of financial and economic injury. Evidence at trial showed threats of force and violence. The Fourth Circuit noted that there was no suggestion that the evidence surprised defense counsel, and that the evidence was probative of a fear of economic injury induced by threats of violence. Significantly, the court noted that the trial court "carefully followed the language of the indictment in charging the jury that in order to

convict, it was essential for the government to show that Iozzi obtained money, or attempted to do so, through the wrongful use of fear of financial and economic injury to the contractors' businesses." *Id.* at 516.

The government analogizes to *Iozzi* and distinguishes *Stirone* by stating that the trial court carefully followed the language of the indictment in charging the jury as to the extortion element. We agree with appellant that this is simply not true. The portions of the charge excerpted above clearly demonstrate that the jury was permitted to base a conviction on a form of extortion not alleged in the indictment.

Because the evidence as to actual and threatened physical violence may have been relevant to the employees' fear of economic loss, *see, e. g., United States v. Billingsley,* 474 F.2d 63 (6th Cir.), *cert. denied,* 414 U.S. 819, 94 S.Ct. 42, 38 L.Ed.2d 51 (1973), it is at least arguable that there was no variance at all. That question, however, is not before the court.

The particularity of time, place, circumstances, causes, etc., in stating the manner and means of effecting the object of a conspiracy for which petitioners contend is not essential to an indictment. Nor was there any surprise here. The government's opening statement, as well as defendant's opening statement made immediately thereafter, disclosed that at least at that time both parties expected the government to attempt to prove that Mr. Meli's reputation in the community, a reputation as a high ranking member of organized crime with all of the implications of that association, was a contributing factor in the drivers' acquiescing in the 11% agreement. No one suggests that the variance affects defendant's right to be protected from being placed twice in jeopardy.

Because none of the policies underlying the rule were frustrated here, I would hold that the charge to the jury was not a constructive amendment.

> Rather, ... [it] constituted a variance which did not alter the crime charged, nor unfairly surprise the defendant[s], nor create an opportunity for the Government to prosecute the defendant[s] again for substantially the same offense.

*United States v. De Cavalcante*, 440 F.2d 1264, 1272 (3d Cir. 1971). *See also, United States v. Fruehauf Corp.*, 577 F.2d 1038 (6th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978), and *United States v. Goldfarb*, 643 F.2d 422 (6th Cir. 1981), distinguishing *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).*

Alternatively, I would hold that the jury instruction does track the indictment. The indictment charges that the victim owner-drivers were forced to make their employer's contributions to the Health and Welfare and Pension Funds. The indictment further charges that "their consent [was] induced by the wrongful use of force and fear . . . ."

The jury instructions permitted a conviction based solely on the wrongful use of physical force to induce consent. Since threats of physical harm are encompassed in "the wrongful use of force," I would hold that the jury instructions did not amend the indictment. In holding that the words following "induced by the wrongful use of force and fear" limit the indictment to fear of unprofitable loads, the loss of their jobs, etc., the majority has unduly restricted the word "force."

The indictment is poorly drafted. While a narrow reading of this poorly drafted instrument lends support to the majority's position that the extortion was accomplished only through economic force, I believe that the grand jury would be surprised by the majority's holding that it did not charge defendant with using physical force to obtain the drivers' consent to the extortionate payments.

---

* Other circuits have distinguished and limited *Stirone*. *United States v. Thomas*, 610 F.2d 1166, 1173 (3d Cir. 1979); *United States v. Knuckles*, 581 F.2d 305, 311–12 (2d Cir.), *cert. denied*, 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978); *United States v. Haldeman*, 559 F.2d 31, 127 (D.C. Cir. 1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); *United States v. Cirami*, 510 F.2d 69, 72 (2d Cir.), *cert. denied*, 421 U.S. 964, 95 S.Ct. 1952, 44 L.Ed.2d 451 (1975); *United States v. Hand*, 497 F.2d 929, 935 (5th Cir. 1974), *aff'd*, 516 F.2d 472 (5th Cir. 1975) (en banc), *cert. denied*, 424 U.S. 953, 96 S.Ct. 1427, 47 L.Ed.2d 359 (1976); *United States v. Somers*, 496 F.2d 723, 744 (3d Cir.), *cert. denied*, 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974); *United States v. Biondo*, 483 F.2d 635, 641 (8th Cir. 1973), *cert. denied*, 415 U.S. 947, 94 S.Ct. 1468, 39 L.Ed.2d 563 (1974); *United States v. Smith*, 474 F.2d 844, 846–47 (3d Cir.), *cert. denied*, 411 U.S. 970, 93 S.Ct. 2162, 36 L.Ed.2d 692 (1973); *United States v. Kenny*, 462 F.2d 1205, 1215 (3d Cir.), *cert. denied*, 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972); *United States v. Colasurdo*, 453 F.2d 585, 590–91 (2d Cir. 1971), *cert. denied*, 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972); *United States v. De Cavalcante*, 440 F.2d 1264, 1271–72 (3d Cir. 1971); *Jackson v. United States*, 359 F.2d 260, 263 (D.C. Cir. 1966).