**UNITED STATES of America, Plaintiff,**

v.

**Robert H. CLEMMER, Jr., Charles E. Gentry, Defendants.**

**No. CR–3–88–66(1), (2).**

United States District Court, S.D. Ohio, W.D.

Aug. 3, 1989.

Robyn R. Jones, David I. Shroyer, Asst. U.S. Attys., Columbus, Ohio, for plaintiff.

David C. Greer, Michael W. Krumholtz, Dayton, Ohio, for defendant Clemmer.

Daniel J. O'Brien, Dayton, Ohio, for defendant Gentry.

DECISION AND ENTRY SUSTAINING DEFENDANT CLEMMER'S MOTION FOR JUDGMENT OF ACQUITTAL (DOC. # 60) AND OVERRULING DEFENDANT GENTRY'S MOTION FOR JUDGMENT OF ACQUITTAL (DOC. # 60); SENTENCING DATE TO BE SET FOR DEFENDANT GENTRY

RICE, District Judge.

This case is before the Court on the Defendants' Motions for Judgment of Acquittal (Doc. # 60) pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure. For the reasons set forth below, Defendant Clemmer's Motion for Judgment of Acquittal is sustained and Defendant Gentry's Motion for Judgment of Acquittal is denied.

In Counts 1 through 4 of the Indictment, Defendants Clemmer and Gentry were accused of conspiring to commit various offenses, using bribery to obstruct the communication of information to criminal investigators, assisting criminal offenders to avoid apprehension, and affecting the movement of articles and commodities in commerce by extortion. Furthermore, in Counts 5 and 6 of the Indictment, Defendants Clemmer and Gentry, respectively, were charged with willfully and knowingly making false statements on their 1983 tax returns. At the conclusion of the trial, the Defendants were found not guilty on Counts 1 through 4 of the Indictment, and guilty on Counts 5 and 6 of the Indictment.

During the trial, the Government introduced evidence of numerous sources from which Defendants Clemmer and Gentry were supposedly receiving illegal funds. As noted above, the Government attempted to show that the funds received from these various sources were either omitted from or incorrectly reported in the Defendants' 1983 tax returns. Shortly before the case went to the jury, a dispute arose between the Government and counsel for Defendant Clemmer as to whether funds from Wilton Auto Sales had been reported in the Defendant's 1983 tax returns. At the December 14, 1988, Charge Conference, counsel for Defendant Clemmer specifically objected to certain language in jury charge 8006 which referred to interest income from Wilton Auto Sales that Clemmer had allegedly failed to report. Defense counsel maintained that no evidence had been introduced with regard to this particular matter. In response to this objection, the following interchange took place between the Court and the Government's attorney:

THE COURT: Let me ask you a question. Is it your claim that, putting Hawthorne aside, *they* did not fully report what *they* had gained from Wilton Auto Sales during '83?

MR. SHROYER: I think the evidence shows *they* didn't report that on their tax return.

THE COURT: All right. So your theory is that the gravamen of Counts Five and Six is *they* simply underreported their taxable income and, even if the Jury should believe that William Hawthorne never paid them a dime, *they* still are guilty of Counts Five and Six because of the underreporting of the Wilton Auto Sales interest?

MR. SHROYER: Well, the problem with the underreporting, the way I understand it from talking to Robin, it's a false statement. You can overreport your income and still be guilty of this offense.

THE COURT: I understand that; but, however, under the facts of this case, it is your theory that *they* did not report— that *they* underreported *their* Wilton income. Am I correct?

MR. SHROYER: *They* did; and *they* overreported, on the other hand, the juice bar, in the same tax year, on the amended return, and then didn't report Hawthorne. So it's all those false statements, together, that were part of this overall scheme; and I think the Jury could find any one of those.

(Doc. # 64, pp. 7–8) (emphasis added).

After this explanation from the Government, the Court overruled defense counsel's objection to charge 8006. In its entirety, charge 8006 ultimately advised the jury as follows:

In assessing the amount of Defendant's total income, the jury should include any illegally acquired funds along with those lawfully acquired. If the jury finds from the evidence that there was income received, and not reported as the law required, it makes no difference with respect to statements of total income on a tax return, whether such income was lawfully or unlawfully acquired.

Gifts for which nothing is expected in return and loans received by an individual are not considered to be income which must be reported for tax purposes.

Should you find that Hawthorne made to Defendant Clemmer any payment constituting a bribe, such payment is not a gift or loan for tax purposes and the payment must be reported as income on the recipient's tax return. *Furthermore, should you find that Defendant Clemmer received any interest on money loaned to William Littleton of Wilton Auto Sales, such interest is income which must be reported on the recipient's tax return.*

(Emphasis added).

Charge 9006 for Defendant Gentry was virtually identical to charge 8006. During their deliberations on the case, the jury sent the following question out to the Court: "On Count 5 and Count 6 do we have to either prove or disprove *both* the bribe and the nonreported interest income in order to decide our verdict?" The Court's response was "No."

### A. *Defendant Clemmer's Motion for Judgment of Acquittal*

■ In his Motion for Judgment of Acquittal, Defendant Clemmer reasserts his contention that no evidence was introduced to support the claim that he had failed to report interest income from Wilton Auto Sales in his 1983 tax return. In a somewhat surprising reversal, the Government now appears to be in agreement with this position. Oddly enough, the Government now maintains that:

> [t]he government never argued that defendant Clemmer failed to report interest income on his 1983 tax return. In fact on direct examination of the return preparer, Jim Scholes, the government asked Mr. Scholes to identify the specific entries on the 1983 tax return of Robert Clemmer that contained the Wilton Auto Sales 1983 commission. Not once did the government argue in closing argument that Robert Clemmer was guilty of Count 5 because he did not report interest income.

(Doc. # 61, p. 3).

Upon a thorough review of the record, this Court finds that there was indeed no evidence to indicate that Defendant Clemmer failed to report any interest income which he had received from Wilton Auto Sales in his 1983 tax return. In fact, the evidence shows that Clemmer did discuss the interest income with his accountant, James Scholes, and that this income was probably reported in Schedule C of Clemmer's 1983 tax return under the heading of "gross income on used car sales." (See Defendant's Exhibit 3 attached to Memorandum filed in support of Defendants' Motions for Judgment of Acquittal as to Counts 5 and 6 of the Indictment (Doc. # 60) attached hereto as Exhibit C). In its Response Contra, the Government maintains that since no evidence was introduced to indicate that Clemmer failed to report his interest income from Wilton Auto Sales, Clemmer's conviction on Count 5 must have rested upon the jury's belief that Clemmer had received funds from other sources which he failed to report. (*See* Doc. # 61, pp. 6–7).

The Government's complete and sudden reversal in position and the jury's short question with regard to Counts 5 and 6, place this Court in somewhat of a quandary. While the Government originally argued at the charge conference that Defendant Clemmer had failed to report his interest income from Wilton Auto Sales, it now disavows its earlier position. Moreover, although jury instruction 8006 could certainly have been read broadly enough to cover income from various sources, the jury's question would seem to indicate that they narrowed the instruction and considered only two sources of income—the alleged bribe from Hawthorne and the interest income from Wilton Auto Sales.[1] The fact that Defendant Clemmer was found not guilty on Counts 1 through 4 of the Indictment strongly suggests that the jury did not believe beyond a reasonable doubt that Clemmer received bribe monies from Hawthorne. Unfortunately, the only reasonable conclusion to be drawn from this set of circumstances is that the jury convicted Defendant Clemmer on Count 5 for failing to report interest income from Wilton Auto Sales. Since the evidence clearly indicates that this conclusion was erroneous, Defendant Clemmer's Motion for Judgment of Acquittal must be granted.

### B. *Defendant Gentry's Motion for Judgment of Acquittal*

Defendant Gentry, however, is in an entirely different position. His own Motion for Judgment of Acquittal expressly admits

---

**1.** It is certainly understandable how the jury came to narrow instruction 8006 to only two sources of income, the alleged bribe from Hawthorne and the interest income from Wilton Auto Sales. Unlike the proposed instruction 8006 (attached hereto as Exhibit A), which was in general enough form to encompass income not reported from *any* source, instruction 8006 as actually given to the jury (attached hereto as Exhibit B), specifically highlighted, *to the exclusion of any other possible source*, income from the alleged bribe from Hawthorne and the interest income from Wilton Auto Sales. This Court is convinced that had it given proposed instruction 8006, in the general form referenced above, the conviction of Defendant Clemmer on Count 5 of the Indictment would have withstood his Motion for Acquittal.

that there was evidence in the record to indicate that he failed to report interest income received from Wilton Auto Sales. (Doc. # 60, p. 11). However, Defendant Gentry poses two alternative arguments for acquittal.

### 1. The Constructive Amendment Argument

First, Gentry maintains that he is entitled to an acquittal because the charge that he was ultimately convicted of by the jury constituted a constructive amendment to the Indictment. The Supreme Court's decision in *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), is instructive in determining whether a "constructive amendment" has occurred. In *Stirone* the indictment specifically charged the defendant with a narrow scheme of activities. It stated, in part, that he had

caused supplies and materials [sand] to move in interstate commerce between various points in the United States and the site of his plant for the manufacture or mixing of ready mixed concrete, and more particularly, from outside the State of Pennsylvania into the State of Pennsylvania.

*Id.* at 213, 80 S.Ct. at 271. The district court judge, however, "permitted the Government to offer evidence of an effect on interstate commerce not only in sand brought into Pennsylvania from other States but also in steel shipments from the steel plant in Pennsylvania into Michigan and Kentucky." *Id.* at 214, 80 S.Ct. at 271. Moreover, the instruction to the jury allowed them to find the defendant guilty either on the grounds that "(1) sand used to make the concrete 'had been shipped from

another state into Pennsylvania' or (2) '[The defendant's] concrete was used for constructing a mill which would manufacture articles of steel to be shipped in interstate commerce ...' from Pennsylvania into other States." *Id.* Since the indictment specifically charged one link with interstate commerce, and the jury instruction allowed conviction upon an entirely different link, the Court held that there had been a constructive amendment to the indictment and reversed the defendant's conviction. In its concluding paragraph, the Court stated:

"It follows that when only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened."

*Id.* at 218, 80 S.Ct. at 274.

The United States Court of Appeals for the Sixth Circuit has since applied the *Stirone* reasoning on several occasions.[2] One representative example is *United States v. Cusmano*, 659 F.2d 714 (6th Cir.1981). In *Cusmano*, the indictment alleged a violation of the Hobbs Act, based specifically on extortion by threats of economic loss.[3] However, the trial court allowed the jury to hear evidence of threats of economic loss *and* threats of physical violence. Then, the court advised in its charge to the jury that "[t]he term 'fear' as used in these instructions not only encompasses fear of economic loss or damage to certain employee drivers of J & J Cartage Company but also fear

2. *See, e.g., United States v. Zelinka*, 862 F.2d 92 (6th Cir.1988); *Payne v. Janasz*, 711 F.2d 1305 (6th Cir.), *cert. denied*, 464 U.S. 1019, 104 S.Ct. 552, 78 L.Ed.2d 726 (1983); *United States v. Jones*, 647 F.2d 696 (6th Cir.1981); *United States v. Beeler*, 587 F.2d 340 (6th Cir.1978), *cert. denied*, 454 U.S. 860, 102 S.Ct. 315, 70 L.Ed.2d 158 (1981).

3. In pertinent part, Count 1 of Cusmano's indictment stated:

[The codefendants] did knowingly and willfully conspire ... together, and with each other .... to obstruct, delay and affect interstate

commerce, ... and did attempt to do so by extortion, to wit: by threats of economic loss, that is to say, the defendants did force the drivers who were employees ... of the Company to pay the Company employer contributions to the Funds with their consent induced by the wrongful use of force and fear, in that the defendants did threaten certain drivers of the Company with unprofitable truck loads, the loss of their jobs, and the loss of equity in their equipment unless they agreed to the deduction from their ... earnings. *United States v. Cusmano*, 659 F.2d 714, 715 (1981).

of physical violence." *Id.* at 717. The Court of Appeals for the Sixth Circuit reversed the district court's decision, holding that "[t]he events at Cusmano's trial effectively altered the charging terms of the indictment, thus destroying his right to be tried only on the charges set forth in the indictment." *Id.* at 719. In its concluding paragraph the appellate court in *Cusmano* echoes the sentiments of the Supreme Court in *Stirone* by stating:

> It follows that when one means of extortion is charged, a conviction must rest on that charge and not another, even if it is assumed that under an indictment drawn in general terms a conviction might rest upon a showing of either form of extortion.

*Id.*

■ There is one fundamental difference between Defendant Gentry's situation and the cases discussed above. In each of the cases mentioned above, the Defendant was charged with a *narrow and specific* scheme of activities in the indictment and then convicted, based upon evidence which demonstrated an entirely different but equally culpable course of action. In the instant case, however, the Indictment does not charge Defendant Gentry with a *narrow and specific* scheme of activities. Instead, the Indictment speaks of the charge in general terms.[4] Each of the cases discussed above pointedly notes that the constructive amendment challenges raised by the defendants therein might have been thwarted had the indictment been drawn in more general terms. In fact, one Sixth Circuit Court of Appeals decision states that "[i]t has often been held that one way to guard against a constructive amendment claim is to draft an indictment with generality, so long as it contains the necessary specificity." *United States v. Goldfarb*, 643 F.2d 422, 433–34 (6th Cir.1981). In the

instant case, this Court is convinced that Count 6 of the Indictment was drafted broadly enough to cover unreported funds received from *any* proven source or sources other than the alleged bribe monies of Hawthorne.

■ In his Motion for Judgment of Acquittal, Defendant Gentry maintains that the use of the term "substantial" in the Indictment and a statement made by the Government in chambers, to the effect that the Government was relying upon each Defendant's share of the bribe money allegedly received from Hawthorne, require a more narrow reading of the admittedly broad language contained in the Indictment (Doc. # 60, pp. 5, 7–8). At the heart of this argument lies the assertion that defense counsel somehow relied upon these factors in determining that the Count 6 of the Indictment referred only to bribe monies allegedly received by Gentry from Hawthorne. The Court finds the Defendant's argument on this point unpersuasive. The use of the term "substantial" in the Indictment could certainly refer to the bribe monies received from Hawthorne, but it could just as easily be read to include the alleged bribe income *and* the money from the Juice Bar *and* the missing money from Molen *and* the interest income from Wilton Auto Sales. If the bribe money alone was a substantial amount, then the bribe money in combination with these other funds would certainly constitute a substantial amount as well. The fact that the conviction was apparently based upon a finding that the unreported income consisted of monies other than the bribe monies allegedly received from Hawthorne, does not in any way require a more narrow reading of the general language of the Indictment. As to the statement made by the Government in chambers, counsel for Defendant

---

4. Count 6 of the Indictment charged as follows: On or about April 13, 1984, in the Southern District of Ohio, Charles E. Gentry, a resident of Dayton, Ohio, did willfully and knowingly make and subscribe a 1983 U.S. Individual Income Tax Return (Form 1040), which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which said 1983 U.S. Individual Income Tax Return (Form 1040) he did not believe to be true and correct as to every material matter in that the said return reported on line 22 his total income was $30,133.00 whereas, as he then and there well knew and believed, he received substantial income in addition to that heretofore stated.

Gentry has taken it out of context and, even if it were in context, it is difficult to imagine how much reliance counsel could have placed on a statement that was made by the Government only a few days prior to the conclusion of the six week trial.

Moreover, if counsel for Defendant Gentry had any doubt as to the scope of Count 6 of the Indictment, either a motion for a bill of particulars or an attempted stipulation would have been the proper means of ascertaining the same. The record suggests that defense counsel knew "early on" in the trial, through the testimony of Molen, that the Government was seeking to introduce evidence of the missing money of Molen, *inter alia*, as an indicia of funds not reported for the purpose of Count 6. Thus, while it may have been reasonable for defense counsel to believe that the *primary* source of unreported income was the bribe money, it was not reasonable for counsel to blindly assume that said money was the *only* source of unreported income—especially in view of the general terms of the Indictment.

### 2. Failure to Establish an Offense Under 26 U.S.C. § 7206(1)

Defendant Gentry's second argument in his Motion for Judgment of Acquittal is that the Government failed to show that he had committed any offense under 26 U.S.C. 7206(1). The Defendant once against points to the language in Count 6 of the Indictment which states that the Defendant "then and there well knew and believed, he received substantial income in addition to that heretofore stated." According to the Defendant Gentry, "As a matter of law and a matter of common sense, $245.05 is not 'substantial income' within the purview of the 'tax charges' as stated in the indictment...." (Doc. # 60, p. 12).

■ As a matter of first instance, it should be noted that § 7206(1) does not require that a false statement on an income tax return be "substantial." Section 7206(1) only requires that such a misstatement be "material." Almost all of the Circuits that have considered the issue of what constitutes a material misstatement for purposes of Section 7206(1) have held that this is a question of law which the district court must decide.[5] Moreover, in analyzing whether a particular misstatement is a "material" one, the amount of the underpayment of taxes is certainly *not* a determinative factor. In *United States v. Greenberg*, 735 F.2d 29 (2d Cir.1984), the Court of Appeals for the Second Circuit stated:

> The purpose of section 7206(1) is not simply to ensure that the taxpayer pay the proper amount of taxes—though that is surely one of its goals. Rather, that section is intended to ensure also that the taxpayer not make misstatements that could hinder the Internal Revenue Service ("IRS") in carrying out such functions as the verification of the accuracy of that return or a related tax return.... Greenberg's argument that the misstatements were not material because they resulted in, at most, minimal underpayments of taxes ignores the potential of the misstatements for impeding the IRS's performance of its responsibilities.

*Id.* at 31. In fact, the Court of Appeals for the Seventh Circuit has gone so far as to hold that "false statements relating to gross income, irrespective of the amount, constitute a material misstatement in violation of Section 7206(1)." *United States v.*

---

5. *See, e.g., United States v. Flake*, 746 F.2d 535, 537 (9th Cir.), *cert. denied*, 469 U.S. 1225, 105 S.Ct. 1220, 84 L.Ed.2d 360 (1984); *United States v. Holecek*, 739 F.2d 331, 337 (8th Cir.), *cert. denied*, 469 U.S. 1218, 105 S.Ct. 1200, 84 L.Ed.2d 343 (1984); *United States v. Greenberg*, 735 F.2d 29, 31 (2d Cir.1984); *United States v. Whyte*, 699 F.2d 375, 379 (7th Cir.1983); *United States v. Gaines*, 690 F.2d 849, 858 (11th Cir.1982); *United States v. Strand*, 617 F.2d 571, 574 (10th Cir.), *cert. denied*, 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 48 (1980); *United States v. Taylor*, 574

F.2d 232, 235 (5th Cir.), *cert. denied*, 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978); *United States v. Romanow*, 509 F.2d 26, 28 (1st Cir. 1975). This Court is only aware of one appellate decision, *United States v. Null*, 415 F.2d 1178 (4th Cir.1969), which has concluded that the question of materiality is one for the jury. The *Null* Court offers no case law or statutory authority to support this conclusion and this Court finds its reasoning unpersuasive. The Court of Appeals for the Sixth Circuit has not ruled on this issue.

*Hedman,* 630 F.2d 1184, 1196 (7th Cir. 1980). Thus, in this Court's view, Defendant Gentry's argument with respect to the dollar amount of his misstatement is not well taken.

However, the inartful drafting of the Indictment raises another issue which this Court believes it must consider. In determining whether Defendant Gentry is entitled to a Judgment of Acquittal, this Court must decide whether the inclusion of the surplus words "substantial income" in the Indictment was so prejudicial to the Defendant as to change the very nature of the offense charged. As noted above, substantiality is not a requirement of § 7206(1) and, thus, its mention in the Indictment could be viewed as mere surplusage. Yet, as the Court of Appeals for the Sixth Circuit cautioned in *Payne v. Janasz,* 711 F.2d 1305, 1312 (6th Cir.), *cert. denied,* 464 U.S. 1019, 104 S.Ct. 552, 78 L.Ed.2d 726 (1983), a court should not assume "that all surplus language is harmless and non-prejudicial." According to the *Janasz* court, an inquiry must be made to determine whether the surplus language infringed upon the defendant's right to fair notice of the charges raised against him or whether the language so confused the issue to the jury as to render the trial fundamentally unfair. As discussed earlier in the constructive amendment section of the decision, this Court does not believe that the inclusion of the term "substantial" in the Indictment significantly infringed upon Defendant Gentry's right to be given fair notice of the charges raised against him. Furthermore, there is no indication in the record that the inclusion of the term "substantial" in the Indictment served to confuse the jury. Thus, this Court concludes that the surplus language in Count 6 of the Indictment was non-prejudicial to Defendant Gentry.

WHEREFORE, based upon the aforesaid, this Court sustains the Motion of the Defendant Clemmer seeking judgment of acquittal and overrules that of the Defendant Gentry seeking judgment of acquittal.

A sentencing date for the Defendant Gentry, upon his conviction on Count 6 of the Indictment, will be set within a week to ten days from date.

### EXHIBIT A

#### "PROPOSED INSTRUCTION"

#### INCOME NOT REPORTED AS REQUIRED

In assessing the amount of Defendant's total income, the jury should include any illegally acquired funds along with those lawfully acquired. If the jury finds from the evidence that there was income received, and not reported as the law required, it makes no difference with respect to statements of total income on a tax return, whether such income was lawfully or unlawfully acquired.

[Devitt & Blackmar § 35.11, modified]

### EXHIBIT B

#### "INSTRUCTION AS ACTUALLY GIVEN TO JURY"

#### INCOME NOT REPORTED AS REQUIRED

In assessing the amount of Defendant's total income, the jury should include any illegally acquired funds along with those lawfully acquired. If the jury finds from the evidence that there was income received, and not reported as the law required, it makes no difference with respect to statements of total income on a tax return, whether such income was lawfully or unlawfully acquired.

Gifts for which nothing is expected in return and loans received by an individual are not considered to be income which must be reported for tax purposes.

Should you find that Hawthorne made to Defendant Clemmer any payment constituting a bribe, such payment is not a gift or loan for tax purposes and the payment must be reported as income on the recipient's tax return. Furthermore, should you find that Defendant Clemmer received any interest on money loaned to William Littleton of Wilton Auto Sales, such interest is income which must be reported on the recipient's tax return.

EXHIBIT C

H - 832 - 1270
W - 449 - 1112

Robert H. Clemmer
Sch C — Bus          Bought "Juice Bar" (Health Food)
                     in 1982 — — wrote off everything
Interest? None              Sold in 1983
When was it purchased? 10/82   Total Selling Price .    3000.00
                          Installment Sale 125.00/mon start 5/0

Sch C — Bus
Commission income    on car sales   $ 250.00
         Received in Dec, '83

Does this
have to be
reported on
1040?
{ Sold 3 cars in '83        Selling Price      1295.—
                            Cost    1013.00    1600.—
                                    1385.50     625.—
                                     300.00
                            Trf Tax  22.00

Interest Income    Milton Fed S+L    31.00

Wife's Income — Married 8-26-83   only income subject To
       city Tax is from 8/26 To 12/31   (Prorate w-2)

Child Care for Bart — "First Day Child Development."    $ 300 —

I. D. — Use standard

Neal Hailey — IRS.
         225-2808

DEFENDANT'S
EXHIBIT
3