**UNITED STATES of America, Plaintiff–Appellee,**

v.

**William Hugh FLEMING, Defendant–Appellant.**

No. 92–5172.

United States Court of Appeals, Tenth Circuit.

March 23, 1994.

Keith Ward, of Tilly & Ward, Tulsa, OK, for defendant-appellant.

Neal B. Kirkpatrick, Asst. U.S. Atty. (F.L. Dunn, III, U.S. Atty., with him on the brief), Tulsa, OK, for plaintiff-appellee.

Before SEYMOUR, Chief Judge, MCWILLIAMS, and EBEL, Circuit Judges.

SEYMOUR, Chief Judge.

William Fleming appeals his convictions on two counts of conspiracy to violate the transfer tax provisions of the National Firearms Act (NFA), I.R.C. §§ 5811, 5812, and one count of making false statements on required forms in order to avoid paying applicable transfer taxes, I.R.C. § 5861(*l*). The district court sentenced him to a term of forty-six months imprisonment and a $25,000 fine. Mr. Fleming contends, inter alia, that the district court should have granted him a judgment of acquittal; that the conspiracy counts are multiplicitous; that the government failed to comply with disclosure obligations pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); that he was prejudiced by improper rebuttal evidence; and that the trial court erred in its instructions to the jury. We affirm.

## I.

Sections 5811(a) and (b) of the NFA impose a tax of $200.00, payable by the transferor upon the transfer of any firearm. No firearm may be transferred under the Act until the transferor has filed an application for the transfer with the Bureau of Alcohol, Tobacco and Firearms (BATF), the application has been approved, and the tax has been paid. *See* I.R.C. § 5812. The NFA transfer tax is implemented by federal regulations. *See* 27 CFR §§ 179 *et. seq.* (1993). Those regulations provide an exemption from the tax for certain government entities.

A firearm may be transferred without payment of the transfer tax to or from any State, possession of the United States, any political subdivision thereof, or any official police organization of such a government entity engaged in criminal investigations. *Id.* § 179.90(a). The section further provides that a tax-exempt transfer must be made on a special application, the BATF Form 5. The transferor must check a box on this form describing the applicable category of tax-exempt sale and then sign the form. By signing the form, the transferor states that he has examined the application and found it to be true, correct and complete. Section 5861 of the NFA makes it unlawful for any person knowingly "to make, or cause the making of, a false entry on any application" required by the Act. I.R.C. § 5861(*l*).

Mr. Fleming was convicted on counts two, three, and eight of an eight count indictment. Count two of the indictment alleges that Mr. Fleming and others conspired to use a fictitious or "straw" transfer of machineguns to and from the Seminole, Oklahoma Police Department (SPD) in order to take advantage of the transfer tax exemption. George Gibbons, a gun collector, wanted to sell six machineguns, and Mr. Fleming agreed to find a buyer for them. Mr. Fleming later contacted Mr. Gibbons and told him that the SPD would take the guns. Mr. Fleming then sent Mr. Gibbons a completed Form 5 reflecting the tax-free transfer of the weapons. Mr. Gibbons signed it and sent in the forms. After the forms were approved, Mr. Gibbons shipped the guns to the SPD. The guns were received by then-Chief of the SPD, Hunter Mixon. Mr. Mixon delivered the guns to Stephen Scribner, a reserve police officer for the City of Drumright, Oklahoma, and former licensed firearms dealer. Later, Mr. Fleming located a purchaser for the firearms. The SPD applied to transfer the firearms to this purchaser. After the applications were approved, the firearms were delivered to Mr. Fleming, who delivered them to the ultimate buyers.

Counts three and eight of the indictment involve the "straw" transfer of two Heckler and Koch MP5 SD machineguns and two silencers through the Creek County District Attorney's Office. Count three involved a conspiracy by Mr. Fleming and others to submit false and fraudulent BATF Form 5s in an attempt to avoid paying the transfer taxes. On paper, the firearms were transferred first to the Office of the District Attorney for Creek County, Oklahoma, and then

to Mr. Scribner and Clayton Badger, an attorney in Drumright, Oklahoma. In reality, the firearms were delivered directly from Mr. Fleming to Mr. Badger and Mr. Scribner. No firearms were ever received or delivered by the Creek County District Attorney's Office. Count eight involved the fraudulent execution of the Form 5s by Mr. Fleming. Mr. Badger and Mr. Scribner testified that they had agreed to buy the weapons from Mr. Fleming, and that the three men discussed ways to "paper" the firearms. Mr. Fleming prepared applications to transfer the firearms from himself to the Creek County District Attorney's Office, and Creek County Assistant District Attorney Don Nelson signed them. Mr. Fleming sent the applications to the BATF, which approved them. Mr. Fleming delivered the firearms directly to Mr. Badger and Mr. Scribner, and then prepared another set of Form 5s for the transfer of the weapons from the Creek County District Attorney's Office to Mr. Badger and Mr. Scribner.

## II.

Mr. Fleming first asserts that the trial court erred in not granting him judgment of acquittal for three reasons: the evidence against him was insufficient as a matter of law; his prosecution was barred by the government's failure to comply with the Administrative Procedure Act (APA); and the rule of lenity should have been applied. We review a district court's order denying a motion for a verdict of acquittal under the same standard that court applied when considering the motion. *United States v. White,* 673 F.2d 299, 301 (10th Cir.1982). All of the evidence must be reviewed in the light most favorable to the government, "recogniz[ing] the right of the jury to determine credibility and to find the facts." *Id.* The court may enter a judgment of acquittal only if the evidence that the defendant committed the crimes alleged is so meager that "no reasonable jury could find guilt beyond a reasonable doubt." *Id.*

Mr. Fleming argues that the evidence of his guilt was insufficient as a matter of law. He contends that all of the statements that he made on the BATF forms were liter-

ally true because the broad definition of transfer in the NFA encompasses "transfers" such as the ones to both the SPD and the Creek County District Attorney's Office. This definition states:

The term "transfer" and the various derivatives of such word, shall include selling, assigning, pledging, leasing, loaning, giving away, or otherwise disposing of.

I.R.C. § 5845(j). He further argues that even if these firearms were transferred to the government entities to avoid paying the transfer tax, neither the NFA nor any other provision of law makes such avoidance unlawful.

To support his argument, Mr. Fleming cites a passage in *Gregory v. Helvering,* 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935), that states:

It is earnestly contended on behalf of the taxpayer that since every element required by the foregoing subdivision (B) is to be found in what was done, a statutory reorganization was effected; and that the motive of the taxpayer thereby to escape payment of a tax will not alter the result or make unlawful what the statute allows. It is quite true that if a reorganization in reality was effected within the meaning of subdivision (B), the ulterior purpose mentioned will be disregarded.

*Id.* at 468–69, 55 S.Ct. at 267. Mr. Fleming's reliance on this case is misplaced because the Court also stated: "But the question for determination is whether what was done, apart from the tax motive was the thing which the statute intended." *Id.* at 469, 55 S.Ct. at 267. In answering this question, the Court focused on substance over form and found that even though the whole transaction followed the literal requirements of the statute, it was nothing more than a sham. *Id.* at 470, 55 S.Ct. at 268. "[T]he transaction upon its face lies outside the plain intent of the statute. To hold otherwise would be to exalt artifice above reality and to deprive the statutory provision in question of all serious purpose." *Id.*

After *Gregory,* courts have disallowed sham transactions in a variety of contexts. *See, Bohrer v. Commissioner,* 945 F.2d 344,

347 (10th Cir.1991) (citing cases). We have clearly recognized that the substance of a tax transaction controls over the labels attached to it:

> Only a transaction that has "economic substance which is compelled or encouraged by business or regulatory realities, is imbued with tax-independent consideration, and is not shaped solely by tax-avoidance features that have meaningless labels attached" will be recognized for tax purposes.

*Jackson v. Commissioner*, 966 F.2d 598, 600 (10th Cir.1992) (quoting *Frank Lyon Co. v. United States*, 435 U.S. 561, 583–84, 98 S.Ct. 1291, 1303, 55 L.Ed.2d 550 (1978)).

In the instant case, we look to the substance and not merely the form of the transfers. From the testimony given, a reasonable jury could decide that the alleged transfers to government agencies were sham transactions. In counts two and three, the jury was instructed that to find Mr. Fleming guilty, it had to find that he conspired to commit an offense "by means of false statements and improper registration to transfer ... 'firearms' ... without paying the transfer tax." Aplt.App., vol. I, exh. 3. In count 8, the jury was instructed that the elements of the offense were "the making or causing the making of false entries on BATF form 5s, applications and records required to be kept." *Id.* The jury was also given the definition of transfer set out in the NFA. The government framed its closing argument in terms of the transfer to the Seminole Police Department as being a "charade, an absolute and false charade." Aplt.App., vol. IV, doc. 25 at 1507.

The jury heard Mr. Scribner testify that the six machineguns were "transferred" to the Seminole Police Department so that Mr. Fleming could save $1200. Transcript of Jury Trial, vol. II, at 111. In addition, Mr. Badger testified that the two Heckler and Koch machineguns and silencers were merely "papered" through the Creek County District Attorney's office and that the office never had physical possession of them. *Id.*, vol. III, at 402. He further testified that this transaction was done to avoid paying the transfer tax. *Id.* at 403.

Under the plain meaning of the regulation, the exemption from the tax was written so that government entities would not have to pay tax when selling or acquiring firearms. Allowing an exemption for any person who has a contact with such a government entity to transfer firearms through that contact solely to avoid tax liability is beyond the plain intent of the regulation. Because there was sufficient evidence that the transactions were shams, there was sufficient evidence to convict Mr. Fleming on all three counts.

Mr. Fleming's arguments that his convictions should be reversed because the government did not comply with the APA or because the rule of lenity should be applied, likewise fail. Under the provisions of the APA, agencies must promulgate and publish certain rules and other actions before they can be enforced against individuals. *See* 5 U.S.C. § 552. Fleming asserts that the " 'theory' of liability BATF seeks to impose is an agency 'rule' requiring publication under the APA." Aplt.Brief at 18. He claims that the information that he put on the BATF Forms was literally correct; therefore, he did not violate any existing regulation or regulatory policy. Thus, he argues, his prosecution necessarily includes some violation not included in the applicable regulations.

The government notes correctly, however, that Mr. Fleming was "not convicted of a regulatory violation" which would give rise to the application of the APA. Aplee.Brief at 19. He was convicted of a "series of statutory violations, including conspiracy and causing and making false statements." *Id.* No regulation is necessary to state that the exception to the imposition of a transfer tax does not include sham transfers made solely to avoid the imposition of the tax. Moreover, the regulation providing the tax exemption at issue here specifically directs the transferor to "satisfy himself of the claimed exempt status of the transferee *and the bona fides of the transaction.*" 27 C.F.R. § 179.90(e) (emphasis added).

Similarly the rule of lenity is not applicable to this case. The term "transfer" as used in the NFA is not ambiguous as required by the rule. *See Bifulco v. United States*, 447 U.S.

381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980). Sham transfers are not transfers under any definition of the term. There was sufficient evidence for the jury to find that the "transfers" at issue were not "transfers" at all but were sham transactions set up solely to avoid the payment of the transfer tax.

### III.

██ Mr. Fleming also argues that counts two and three of the indictment are multiplicitous. "[M]ultiplicity refers to multiple counts of an indictment which cover the same criminal behavior." *United States v. Dashney,* 937 F.2d 532, 540 n. 7 (10th Cir.1991). In *United States v. Swingler,* 758 F.2d 477 (10th Cir.1985), we addressed a similar claim that defendants were being charged in more than one count for a single conspiracy. We stated there that " '[w]hen ... the separate conspiracies are both founded upon a general conspiracy statute, the relevant inquiry is whether there existed more than one *agreement* to perform some illegal act or acts.' " *Id.* at 491–92 (quoting *Ward v. United States,* 694 F.2d 654, 661 (11th Cir.1983)).

The existence of one or multiple conspiracies is ordinarily a fact question. *Id.* at 492. While Mr. Fleming did raise the multiplicity issue pretrial, he did not request the court to instruct the jury that it had to find two separate conspiracies in order to convict on both counts. On the contrary, the court instructed the jury that each count charged a separate crime. This instruction was substantially similar to one proposed by Mr. Fleming. Accordingly, to the extent that Mr. Fleming has preserved this issue for appeal at all, we review the indictment for multiplicity on its face as a matter of law.

Examination of the indictment does not support Mr. Fleming's contention that the counts were multiplicitous. Counts two and three involved separate agreements to perform separate acts to violate the same laws. Count two involved a conspiracy between Mr. Fleming and others to "transfer" Mr. Gibbons' machinegun collection to a buyer through the Seminole Police Department. Count three involved a conspiracy between Mr. Fleming, Mr. Scribner, Mr. Badger and

others to "paper" two HK MP5 SD machineguns and two silencers through the Creek County District Attorney's Office. The two conspiracy counts thus relate to two separate courses of conduct. The counts are therefore not multiplicitous on their face.

### IV.

██ Mr. Fleming contends that the government failed to comply with the disclosure obligations imposed by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Whether the government was required to disclose certain evidence under *Brady* is a mixed question of law and fact which we review *de novo. United States v. Buchanan,* 891 F.2d 1436, 1440 (10th Cir. 1989). Due process requires that the government disclose to the accused all evidence that is both exculpatory and material. *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196. Where a witness' credibility is material to the question of guilt, the disclosure obligation includes impeaching information. *Buchanan,* 891 F.2d at 1443. Evidence is considered material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).

On appeal, Mr. Fleming argues that the government committed several *Brady* violations. Many of these alleged violations concern evidence that either does not exist or that is patently not material. Accordingly, the only issues we address are the government's alleged nondisclosure of evidence that BATF agents destroyed at least one statement by Mr. Scribner, and evidence of "other subterfuges" by Mr. Mixon, Mr. Scribner, and Mr. Badger against other firearms dealers. In response to Mr. Fleming's post-trial motion raising these issues, the district court held that no constitutional violations had occurred, and that even in the aggregate the alleged errors did not have a "substantial influence on the outcome of the trial." Dist. Ct.Rec., file 2, doc. 117.

Mr. Fleming claims that BATF agents destroyed at least one hand-written statement by Mr. Scribner before Agent Blair Ward wrote the statement that Mr. Scribner signed. The government argues that Agent Ward's first attempt to take Mr. Scribner's written statement was abandoned because of a time constraint, and that there is no evidence that any statements made were exculpatory. We agree with the district court that the failure of the government to preserve or disclose any previously written statements by Mr. Scribner does not amount to a *Brady* violation. The mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard. *United States v. Fletcher,* 801 F.2d 1222, 1225 (10th Cir.1986). Absent a showing of police or prosecutorial misconduct, missing evidence is considered material only if the exculpatory value of the evidence was apparent before the evidence was destroyed, and the defendant was "unable to obtain comparable evidence by other reasonable comparable means." *Id.* (quoting *California v. Trombetta,* 467 U.S. 479, 489, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984)). The defendant bears the burden of showing bad faith on the part of the government when evidence is destroyed. *United States v. Molina–Cuartas,* 952 F.2d 345, 349–50 (10th Cir.1991). Mr. Fleming has not made the requisite showing of bad faith. In addition, he has not established that any previous statement was exculpatory, or that he was unable to obtain comparable evidence. It is also clear that he knew about Mr. Scribner's previous statements before trial. During trial, Mr. Fleming questioned Mr. Scribner about the destruction of the earlier statement. Transcript of Jury Trial, vol. III, at 341–42. He could have also asked Mr. Scribner about the contents of any previous statements, or about the truth of the one he signed. In addition, Mr. Fleming could have called Agent Ward to testify about the incident, but did not.

Mr. Fleming also argues that the government withheld evidence of similar schemes perpetrated by Mr. Mixon, Mr. Scribner, and Mr. Badger against other firearms dealers. Prior to trial, Mr. Fleming received the investigatory statements and grand jury testimony of Mr. Mixon and Mr. Badger, and the investigatory statement of Mr. Scribner. In addition, Mr. Fleming's counsel spent several days with the case agent and the entire prosecution file. Mr. Fleming also questioned Mr. Scribner during trial about his involvement in similar schemes. We therefore hold that the district court was correct in finding that the alleged *Brady* violations were not material.

## V.

Mr. Fleming argues that he was unfairly prejudiced by rebuttal evidence admitted in violation of Federal Rule of Evidence 608(b). This rule precludes the admission of extrinsic evidence of specific instances of conduct of the witness when offered for the purpose of attacking credibility. The rule does not apply, however, when extrinsic evidence is used to show that a statement made by a defendant on direct examination is false, even if the statement is about a collateral issue. *See* 27 *Charles A. Wright & Victor J. Gold, Federal Practice and Procedure* § 6096 at 546–47 (1990). A defendant may not make false statements on direct examination and rely on the government's inability to challenge his credibility as to the truth of those statements. *See Walder v. United States,* 347 U.S. 62, 65, 74 S.Ct. 354, 356, 98 L.Ed. 503 (1954).

In the instant case, the government's rebuttal witness, Patrick McGuire, testified that specific statements made by Mr. Fleming on direct examination were false. The trial court may admit this evidence subject only to the limitations of Federal Rule of Evidence 403, under which evidence may be excluded when its probative value is outweighed by the danger of unfair prejudice. We generally review the trial court's decision to admit evidence under this rule for abuse of discretion. *See United States v. Rackstraw,* 7 F.3d 1476, 1482 (10th Cir.1993). Because Mr. Fleming did not object on Rule 403 grounds at trial, however, we review his claim only for plain error. *Id.* After examining Mr. McGuire's testimony, we hold that the district court's admission of this evidence during rebuttal was not plainly erroneous.

## VI.

■ Mr. Fleming's argument that the trial court erred in its instructions to the jury is similarly without merit. The court rejected Mr. Fleming's request for an instruction, based on *Cheek v. United States,* 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), that would have required the jury to find he conspired to willfully evade the transfer tax. The government opposed the instruction because Mr. Fleming was not charged with tax evasion in the classic sense, but with making false statements on BATF forms in order to avoid paying a tax. The district court agreed with the government and did not use the words "willful" or "evade" in the jury instructions.

On appeal, Mr. Fleming relies on *Cheek* and *United States v. Thompson/Center Arms,* —— U.S. ——, 112 S.Ct. 2102, 119 L.Ed.2d 308 (1992), to argue that tax avoidance is lawful, and that only tax evasion is a crime. Therefore, he contends, he must have been convicted of tax evasion, and the court's failure to instruct the jury that good faith negates willful evasion was erroneous. We disagree. Mr. Fleming was charged with conspiring, through the use of false statements on BATF forms, to transfer machineguns without paying the transfer tax. Because his crime was not merely evading the payment of taxes, but setting up sham transactions in order to mislead the BATF, the district court did not err in refusing to instruct the jury on the elements of willful tax evasion.

We have reviewed Mr. Fleming's other arguments and conclude they do not constitute reversible error. Mr. Fleming's conviction is **AFFIRMED.**