Lynn M. CADENA, Plaintiff,

v.

THE PACESETTER CORPORATION, Defendant.

No. CIV. A. 97–2659–KHV.

United States District Court, D. Kansas.

Dec. 23, 1998.

---

Daniel D. Crabtree, Stinson, Mag & Fizzell, P.C., Overland Park, KS, Carl A. Gallagher, McAnany, Van Cleave & Phillips, P.A., Gregory P. Goheen, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, Christy A. Noland, Stinson, Mag & Fizzell, P.C., Kansas City, MO, for Defendant.

Brett A. Davis, Larson & Larson, P.C., Michael S. Ketchmark, Kansas City, MO, for Plaintiff.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Lynn Cadena filed suit against her former employer, The Pacesetter Corporation, seeking damages for employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff alleged that defendant subjected her to a hostile work environment in her job as a telemarketer.[1] After a trial, the jury returned a verdict in favor of plaintiff, awarding $50,000 in compensatory damages and $700,000 in punitive damages. The Court entered judgment in accordance with the verdict but reduced the total award to $300,000

---

1. Plaintiff also alleged constructive discharge, but the Court granted summary judgment for defendant on this claim. *See Memorandum and Order* (Doc. # 73) filed August 6, 1998.

pursuant to the statutory cap. *See* 42 U.S.C. § 1981a(b)(3)(D). The matter now comes before the Court on *Defendant's Motion For Judgment As A Matter Of Law, Or, In The Alternative, Motion For A New Trial* (Doc. # 120) filed October 1, 1998.

### Judgment As A Matter Of Law Standards

■■■ Judgment as a matter of law under Rule 50(b) "should be cautiously and sparingly granted." *Zuchel v. City and County of Denver,* 997 F.2d 730, 734 (10th Cir.1993). The Court must affirm the jury's verdict if, viewing the record in the light most favorable to the nonmoving party, it contains evidence upon which the jury could properly return a verdict for the nonmoving party. *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.,* 82 F.3d 1533, 1546 (10th Cir.1996). The Court does not "weigh the evidence, pass on the credibility of the witnesses, or substitute [its] conclusions for that of the jury." *Id.* The Court must enter judgment as a matter of law in favor of the moving party, however, if "there is no legally sufficient evidentiary basis ... with respect to a claim or defense ... under the controlling law." *Id.* at 1546–47 (quoting Fed.R.Civ.P. 50(a)). A legally sufficient basis requires more than a "scintilla of evidence" favoring the nonmoving party. *Cooper v. Asplundh Tree Expert Co.,* 836 F.2d 1544, 1547 (10th Cir.1988).

### New Trial Standards

■■■ The decision to grant a motion for new trial is committed to the trial court's sound discretion. *See Unit Drilling Co. v. Enron Oil & Gas Co.,* 108 F.3d 1186, 1194 (10th Cir.1997). In considering a motion for new trial, the Court must view the evidence in the light most favorable to the prevailing party. *See Joyce v. Davis,* 539 F.2d 1262 (10th Cir.1976); *Neyman v. United Telecomm., Inc.,* 1992 WL 97808, Case No. 90–2033 (D. Kan. April 7, 1992), *aff'd,* 1 F.3d 1249, 1993 WL 279765 (10th Cir.1993). "[T]he party seeking to set aside a jury verdict must demonstrate trial errors which constitute prejudicial error or that the verdict is not based on substantial evidence." *White v. Conoco, Inc.,* 710 F.2d 1442, 1443 (10th Cir.1983). The Court should "exercise judgment in preference to the automatic reversal for 'error' and ignore errors that do not affect the essential fairness of the trial."

*McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 553, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) (further quotation and citation omitted).

### Evidentiary Standards

"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Fed.R.Evid. 103; *see also Gomez v. Martin Marietta Corp.,* 50 F.3d 1511, 1518 (10th Cir.1995) ("error in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties, and the burden of demonstrating that substantial rights were affected rests with the party asserting error") (further quotations and citation omitted). A new trial should be granted, however, when the erroneous admission of evidence affected the substantial rights of the parties. *See* Fed.R.Civ.P. 61.

### Factual Background

The Court set out the factual background of this case in its summary judgment order filed August 6, 1998. *See Memorandum and Order* (Doc. # 73).

### Analysis

Pacesetter asserts that the record lacked sufficient evidence to support the jury's findings that (1) it subjected plaintiff to a hostile work environment, (2) it failed to establish its affirmative defense and/or (3) its conduct justified an award of punitive damages. Alternatively, Pacesetter asserts that it is entitled to a new trial because the jury's determination with respect to liability, compensatory damages, and punitive damages was contrary to the clear weight of the evidence presented at trial, and certain evidentiary rulings constituted prejudicial trial error. Finally, Pacesetter asserts that it is entitled to a remittitur.

### I. *Motion for Judgment as a Matter of Law*

At the close of plaintiff's evidence and again at the close of all evidence, Pacesetter sought judgment as a matter of law under Fed.R.Civ.P. 50(a). The Court denied the motion. Defendant now renews its motion for judgment as a matter of law under Fed. R.Civ.P. 50(b).

## A. *Hostile Work Environment*

 Pacesetter asserts that as a matter of law, the conduct of its employee, Charles Bauersfeld, did not create a hostile work environment. Hostile work environment harassment occurs when unwelcome sexual conduct "unreasonably interfer[es] with an individual's work performance or creat[es] an intimidating, hostile, or offensive working environment." *Meritor Sav. Bank, F.S.B. v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). "For sexual harassment to be actionable, it must be sufficiently severe or pervasive to 'to alter the conditions of [the victim's] employment and create an abusive working environment." *Id.* at 67, 106 S.Ct. 2399 (quoting *Henson v. City of Dundee,* 682 F.2d 897, 904 (11th Cir.1982)). Whether conduct was sufficiently severe or pervasive to constitute actionable sexual harassment depends on all of the circumstances, "including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher v. City of Boca Raton,* —— U.S. ——, ——, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). The test whether a work environment is hostile or abusive is disjunctive, "requiring that the harassing conduct be sufficiently pervasive or sufficiently severe to alter the terms, conditions, or privileges of Plaintiff's employment." *See Smith v. Norwest Fin. Acceptance, Inc.,* 129 F.3d 1408, 1413 (10th Cir. 1997).

Plaintiff testified at trial that Bauersfeld, her supervisor, engaged in various instances of harassment. After a group of Pacesetter employees went out one night, in November of 1996, Bauersfeld told her that he was glad she had gone out because he had a "wet dream" about her that night.[2] Plaintiff immediately left the room and reported the incident to another supervisor, Dave Hawley. Over the next few months, Bauersfeld told plaintiff on a weekly basis that he wanted her to go out on Fridays so that he could have "more wet dreams." On different occasions, when plaintiff asked Bauersfeld where he wanted her to make calls, he would say "on my desk." Bauersfeld told plaintiff not to wear her hair a certain way because it turned him on too much. Bauersfeld asked plaintiff if she was getting enough sex and suggested that female co-workers were disagreeable because they hadn't gotten "laid." Bauersfeld responded to plaintiff's comment that he was a "softy" by looking at his groin and saying "I hope I'm not too much of a softy down there." Bauersfeld often came up behind plaintiff and rubbed her back, arms, shoulders and neck in an offensive manner. On February 13, 1997 Bauersfeld told plaintiff to flash her breasts to a co-worker, to motivate him, and stated "I know that sure as hell would turn me on." Bauersfeld told plaintiff he was just joking, but then leaned down and whispered in her ear that "the truth is always said in jest."

In its initial brief in support of its motion for judgment as a matter of law, Pacesetter almost appeared to concede the hostile work environment issue, focusing instead on whether it could be held liable for Bauersfeld's conduct. In its reply brief, however, Pacesetter clearly asserts that Bauersfeld's conduct did not create a hostile work environment, relying heavily on the recent Tenth Circuit opinion in *Penry v. Federal Home Loan Bank of Topeka,* 155 F.3d 1257 (10th Cir.1998).

In *Penry,* Michele Penry and Debra Ann Gillum sued their employer for sexual harassment based on the acts of their fellow employee and supervisor, Charles Waggoner. The Tenth Circuit upheld the grant of summary judgment for defendant, summarizing the district court conclusions as follows:

> In Gillum's case, the [district] court concluded that Waggoner had made one gender-based comment (regarding getting into an assistant's "drawers") and engaged in four specific acts of unwanted physical contact, all of which were because of her

---

2. Pacesetter asserts that the jury could not believe this testimony because plaintiff testified inconsistently about the date of the initial comment about the wet dream and her report of it to her supervisor, Dave Hawley. The Court concludes, however, that the jury reasonably could have concluded that the event occurred sometime in November although plaintiff was confused about the precise date.

gender, in addition to other touching that occurred periodically. In Penry's case, the [district] court found only that Waggoner had made four gender-based comments (the comments on wet dreams, Penry's exposed bra strap, the "drawers" comment, and asking Penry what she was wearing under her dress), and that none of his conduct toward Penry constituted sexually offensive touching. In each case, having narrowed down the relevant acts to a few incidents, the [district] court found that the conduct was not severe or pervasive enough to create an environment that a reasonable juror could find hostile and abusive.

*Penry,* 155 F.3d at 1261 (internal citations omitted). In reviewing this evidence, the Tenth Circuit held that the district court should have considered at least two other incidents, even though they were not gender-based: (1) Waggoner's comments about a mall resembling women's breasts, and (2) the fact that Waggoner took Gillum to a Hooters restaurant while on business travel. *See id.* at 1262 (court must evaluate totality of circumstances in hostile work environment cases). Even adding this evidence into the mix, however, the Tenth Circuit agreed with the district court that a rational jury could not find that plaintiffs' workplace had been "permeated with discriminatory intimidation." *Id.* at 1263. "[T]he gender-based incidents were too few and far between to be considered sufficiently severe or pervasive to alter the conditions of the victims' employment and create an abusive working environment." *Id.* (further citations and quotations omitted).

 Defendant asserts that the alleged conduct in this case is so similar to that in *Penry* that it does not rise to sexual harassment as a matter of law. The Court disagrees. Plaintiff testified to many instances of offensive sexual touching and the conduct, which occurred over a period of months rather over a span of three years, was much more intense than in *Penry.* Viewing our evidence in the light most favorable to plaintiff, it is clear that Bauersfeld's sexually explicit comments (which were frequent), together with his unwelcome touching, were sufficiently severe and persuasive to create a hostile work environment.

**B.** *Affirmative Defense*

Defendant asserts that it is entitled to judgment as a matter of law based on its affirmative defense, newly articulated in *Faragher v. City of Boca Raton,* —— U.S. ——, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and *Burlington Industries v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). In *Burlington Industries,* the Supreme Court held that an employer is subject to vicarious liability when a supervisor with immediate authority over an employee creates an actionable hostile environment. It set forth an affirmative defense to such liability, however, as follows:

> When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. While proof that an employer had promulgated an anti-harassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense. No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

118 S.Ct. at 2270.

Pacesetter asserts that as a matter of law the evidence required the jury to find that

(1) defendant exercised reasonable care to prevent and correct promptly any sexually harassing behavior and (2) plaintiff unreasonably failed to take advantage of. any preventive or corrective opportunities provided by defendant or to otherwise avoid harm. *See id.*

### 1. *Reasonable care by employer*

Defendant asserts that its evidence compels a conclusion that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior. Defendant first notes, from *Burlington,* that "[w]hile proof that an employer had promulgated an anti-harassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense." 118 S.Ct. at 2270. Defendant then cites evidence that it promulgated a policy against sexual harassment, including a complaint procedure, and that this policy was included in the employee handbook. Further, defendant notes that it sent its managers periodic reminders concerning sexual harassment and provided sexual harassment training for all employees, including a videotape aired for employees in January. 1997.

██ If taken at face value, such evidence might support a finding that defendant exercised reasonable care to prevent sexual harassment. But a closer look reveals flaws in defendant's evidence. For example, defendant's corporate counsel sent a memo concerning sexual harassment which began as follows:

The highly publicized confirmation hearings for Clarence Thomas did much to place before the public the emotionally charged issues of sexual harassment. Although the charge did not ultimately block the judge's confirmation, the hearings created an "emergency" atmosphere on capital hill. The most strident of the feminists actually managed to grasp victory out of the jaws of defeat by playing upon this crisis mentality to bully Congress and President Bush into enacting the Civil Rights Act of 1991. Among other things this new law will now permit victims of sexual harassment to recover up to $300,000 in punitive damages from their employers. The price tag for any type of sexual harassment has now been increased significantly.

Defendant's Exhibit 1.

Defendant cites testimony that in 19 years, no employee complained about Bauersfeld's conduct. Based on this evidence defendant contends that it had no reason to know or suspect that Bauersfeld would engage in sexually harassing behavior. But plaintiff presented evidence that when she first complained to Hawley about the November incident, he responded, "that's just Charlie for you." Further, a former Pacesetter employee testified that when he complained about offensive language by Bauersfeld, supervisor Annie Humphrey responded that Bauersfeld made a lot of money for the company and that was how he operated. Such evidence suggests that defendant's managers did know that Bauersfeld engaged in inappropriate conduct.

Defendant also asserts that it exercised reasonable care to promptly correct harassing behavior. Defendant asserts that after plaintiff reported her complaints about Bauersfeld in February of 1997, it took prompt corrective action. Plaintiff testified that she reported the November incident to Hawley, however, shortly after it happened, and that Pacesetter took no action in response. When she told Hawley about the incident of February 13, the company took no action for two weeks. At that point, Whittinghill told her that she was an attractive young lady and that she should construe Bauersfeld's conduct as a compliment. He told plaintiff that Bauersfeld made a lot of money for the company and even suggested that she should feel sorry for Bauersfeld because of his eyesight was failing.[3] No one at Pacesetter ever of-

---

**3.** At trial, by making repeated reference to the fact that Bauersfeld was "going blind," defense counsel attempted to engender sympathy for Bauersfeld and explain why Pacesetter did not initiate aggressive disciplinary measures against him. In fact, as if he were already blind, defense counsel guided Bauersfeld by the arm as he

fered to reassign Bauersfeld or plaintiff so that he would not be her supervisor. When Whittinghill did offer to re-employ plaintiff, she called Hawley to determine if he thought things would be any different if she returned. According to plaintiff, Hawley told her that Pacesetter would never fire Bauersfeld because he made too much money for the company. Cricket Thompson was responsible for investigating plaintiff's complaint for Pacesetter's human resources department, but she did not even know who the complainant was until a few weeks before her deposition in this case. Moreover, in conducting her so-called "investigation," Thompson never talked to Bauersfeld, plaintiff, Hawley, Humphrey or Whittinghill, or any of the employees who witnessed the harassment.

Based on such evidence, defendant is not entitled to judgment as a matter of law on the first prong of its affirmative defense. Defendant must prevail on both prongs, in order to prevail at all, so this conclusion is fatal to its theory. Nonetheless, the Court will briefly address defendant's argument on the second prong.

### 2. Plaintiff's duty to avoid harm

Pacesetter argues that plaintiff failed to meet her affirmative duty under *Burlington* and *Faragher* to file a complaint and thus take advantage of its corrective or remedial policy. Defendant points out that although plaintiff testified that she reported the wet dream comment to Hawley, the date when she first claimed to have reported it was a date when she did not work. Coupling this fact with Hawley's testimony that plaintiff never told him about the incident, defendant asserts that the Court must find as a matter of law that plaintiff did not report the incident. The Court disagrees: on the evidence presented, the jury could have concluded that plaintiff was mistaken about the date but that she did in fact report the incident to Hawley in November 1996.

■ Defendant also asserts that even if plaintiff reported an incident in November, it was not reasonable for her to delay reporting

the other incidents until February 1997. Plaintiff testified, however, that Hawley told her that "that was just Bauersfeld" and did nothing to address the problem. From such evidence a jury could find that plaintiff did not unreasonably delay in waiting to report subsequent incidents.

The evidence, taken in the light most favorable to plaintiff, demonstrated that defendant did not exercise reasonable care to prevent and promptly correct any sexually harassing behavior, and that plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities provided by defendant or to otherwise avoid harm. Thus the Court cannot agree that as a matter of law defendant escapes liability for hostile work environment sexual harassment of plaintiff.

### C. Compensatory Damages

The jury awarded compensatory damages of $50,000. Defendant argues that the evidence was not sufficient to support the award, and that as a matter of law it is entitled to a new trial or remittitur. The Court rejects this argument.

■ Plaintiff testified that she suffered emotional and physical problems as a result of defendant's conduct. Specifically, she testified that when Bauersfeld approached her at work, her heart raced and she got dizzy and short of breath. Because of his harassment, plaintiff dreaded going to work. His harassment interfered with plaintiff's ability to do her job. Plaintiff went home and cried every night, and had headaches so severe that she had to lay down in the dark. She could not spend time with her daughter because of her headaches. Plaintiff sought medical treatment for her symptoms.

■ Pacesetter points out that plaintiff did not call an expert witness concerning her emotional or physical injury. Expert testimony is one method of proving emotional damages, but it is not required. *See Smith v. Norwest Fin. Acceptance, Inc.*, 129 F.3d 1408, 1417 (10th Cir.1997) (citing *Fitzgerald*

---

entered the courtroom and took the witness stand. Plaintiff called Bauersfeld as a witness, and on direct examination, he strained to review financial documents and appeared to read them only with great difficulty, leaning toward a beam

of overhead light. At some point, however, counsel suggested that Bauersfeld put on his glasses—and Bauersfeld thereafter appeared to read the financial reports without difficulty.

v. *Mountain States Tel. & Tel., Co.*, 68 F.3d 1257, 1261 (10th Cir.1995) (testimony of treating physician is relevant factor in assessing psychological harm)). Viewed in a light most favorable to plaintiff, the evidence established that plaintiff was entitled to compensatory damages.

Finally, defendant asserts that the compensatory damage award is so large that it must be the result of passion and prejudice. The Court rejects this argument. Although the compensatory damages award is substantial, it is not so large—given the circumstances—that it requires a remittitur. *See, e.g., Smith*, 129 F.3d at 1416–17 (10th Cir. 1997) ( award of $200,000 in emotional damages upheld in discrimination case).

### D. *Punitive Damages*

The jury awarded punitive damages of $700,000. The Civil Rights Act of 1991 allows plaintiff to recover punitive damages only if she proved that Pacesetter acted with "with malice or reckless indifference" to her right to be free from hostile work environment sexual harassment. See 42 U.S.C. § 1981a(b)(1). Pacesetter asserts that plaintiff presented insufficient evidence to support an award of punitive damages, and it is therefore entitled to judgment as a matter of law on this issue.

Pacesetter asserts that an award of punitive damages requires evidence of conduct more egregious than intentional discrimination. The Tenth Circuit has applied this standard to punitive damages claims under other civil rights statutes. *See, e.g., Wulf v. City of Wichita*, 883 F.2d 842, 867 (10th Cir.1989) ("not every intentional violation of a plaintiff's constitutional rights subjects a defendant to punitive damages"). Pacesetter notes that while the Tenth Circuit has not specifically addressed the standard for punitive damages under Title VII, all but one of the other circuits that have considered the question have applied the higher standard to Title VII. *See McKinnon v. Kwong Wah Restaurant*, 83 F.3d 498, 508 (1st Cir.1996) (higher standard for punitive damages under § 1981a); *Harris v. L & L Wings, Inc.*, 132 F.3d 978, 982 (4th Cir.1997); *Turic v. Holland Hospitality, Inc.*, 85 F.3d 1211, 1216 (6th Cir.1996); *Emmel v. Coca–Cola Bottling*, 95 F.3d 627, 636 (7th Cir.1996); *Karch-*

*er v. Emerson Electric Co.*, 94 F.3d 502, 509 (8th Cir.1996); *Ngo v. Reno Hilton Resort Corp.*, 140 F.3d 1299 (9th Cir.1998); *Kolstad v. American Dental Ass'n*, 139 F.3d 958, 969 (D.C.Cir.1998). *But see Luciano v. Olsten Corp.*, 110 F.3d 210, 219–20 (2d Cir.1997) (no additional evidence required for punitive damages). The Tenth Circuit has stated, however, that "[t]he defendant's acts need not have been 'extraordinarily egregious' to support a finding of punitive damages." *Adakai v. Front Row Seat, Inc.*, 125 F.3d 861, 1997 WL 603458 (10th Cir. Oct. 1, 1997) (quoting *Luciano*, 110 F.3d at 220.)

Defendant further argues that punitive damages must be based upon evidence that the employer (as well as the harassing employee) acted with malice or reckless disregard plaintiff's federally protected rights. *See, e.g., Splunge v. Shoney's, Inc.*, 97 F.3d 488, 491 (11th Cir.1996) (refusing to hold that harassing employee's state of mind is imputed to employer in determining whether punitive damages justified). The Tenth Circuit has indicated that an employer may be held liable for punitive damages in civil rights cases if the employer authorized the intentional discrimination, negligently hired or retained the offending employee, employed him in a managerial capacity, or ratified or approved the act. *See Fitzgerald*, 68 F.3d 1257, 1262 (10th Cir.1995).

Having considered the evidence as a whole, the Court concludes that the record is sufficient to support a finding that Pacesetter, through its corporate managers, acted with reckless indifference to plaintiff's rights. Pacesetter's sexual harassment policy memoranda include statements that appear to mock the right of female employees to be free from sexual harassment. Plaintiff presented evidence that Pacesetter failed to timely respond to her complaints of sexual harassment. In response, both Hawley and Whittinghill indicated that they knew about Bauersfeld and that was "just the way [he] was." Plaintiff also introduced evidence that Hawley and Whittinghill stated that no action would be taken against Bauersfeld because he brought in a lot of money. Annie Humphrey (who was in charge of training management and employees on sexual harassment) did not believe that a supervisor would violate Pacesetter's harassment policy

if he exposed his genitalia to a subordinate employee. In fact, although Humphrey witnessed the flashing incident, she did not report or take any action to correct it. Further, Pacesetter took no corrective action until after plaintiff resigned, and even then it dismissed her complaints by suggesting that she view Bauersfeld's attraction to her as a compliment. Pacesetter ultimately issued Bauersfeld a "final warning" not to engage in further harassment, but only after plaintiff had resigned and had sought legal counsel. The jury could have concluded that Bauersfeld was an unfit supervisor, that Pacesetter was reckless in retaining him, and that Pacesetter acted with malice or reckless disregard of plaintiff's rights.

Finally, the punitive damages award was not excessive as a matter of law. The jury could reasonably have determined that a large award was necessary to deter defendant, a large company, from similar conduct in the future.

## II. *Motion For New Trial*

As an alternative to its motion for judgment as a matter of law, defendant moves for a new trial or remitittur.

### A. *Verdict Against The Clear Weight Of The Evidence*

Defendant asserts that it is entitled to a new trial because the jury verdict on liability, compensatory damages, and punitive damages was contrary to the clear weight of the evidence. The Court rejects this argument. The Court found plaintiff and her key witnesses to be very credible. Several defense witnesses, including Bauersfeld, Humphrey and Thompson, lacked credibility. The weight of the evidence was not clearly in defendant's favor. Thus, for the reasons set out by the Court in denying defendant's motion for judgment as a matter of law, the jury verdict is supported by the evidence and should not be disturbed.

### B. *Trial Error*

Defendant asserts that it is entitled to a new trial because the Court erred in admitting certain evidence. Defendant first contends that the Court erred in admitting evidence that Humphrey or Bauersfeld may have lied under oath about their relationship and asked another witness, Mary Sorrells, to do the same. As the Court found at a hearing on defendant's motion in limine, evidence of Humphrey's relationship with Bauersfeld was material to the question why plaintiff failed to report Bauersfeld's conduct to Humphrey, her supervisor. Further, such evidence was relevant to the issue of Humphrey's credibility and any bias toward Bauersfeld.

█ Defendant argues that evidence of a relationship between Humphrey and Bauersfeld, and of Humphrey's attempt to cover it up, should have been excluded under Fed. R.Evid. 608(b) which provides that "[s]pecific instances of the conduct of a witness, for purposes of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence." Fed.R.Evid. 608(b). Rule 608(b) does not apply, however, when extrinsic evidence is used to show that a statement made by a [witness] on direct examination is false, even if the statement is about a collateral issue. *United States v. Fleming,* 19 F.3d 1325, 1331 (10th Cir.1994) (defendant was witness). A witness may not make false statements on direct examination and rely on the opposing party's inability to challenge his credibility as to the truth of those statements. *Id.* Further, the question whether Humphrey and Bauersfeld had an improper relationship was a material issue in the case *See Velasquez v. Leonardo,* 898 F.2d 7, 8 (2d Cir.1990) (impeachment with extrinsic evidence proper to contradict testimony on fact material to case).

█ Defendant also argues that it is entitled to a new trial based upon admission of evidence of its net worth. Defendant notes that the jury heard evidence about defendant's net worth before it decided to award punitive damages, and that its award was therefore based upon passion and prejudice.[4]

---

4. Under the heading of "Evidentiary Errors," defendant requests that "the Court grant a new trial based upon the evidence relating to the alleged 'perjury' of Ms. Ann Humphrey and the net worth of defendant." *Defendant's Memorandum In Support Of Its Motion For Judgment As A*

But the net worth information was in a joint stipulated exhibit and Pacesetter waived all objections to the exhibit, other than its right to challenge the sufficiency of the evidence to support a claim for punitive damages. The Court sees no basis for a claim of error. Moreover, any arguable error was waived by defendant's failure to timely object.

IT IS THEREFORE ORDERED that defendant's *Motion For Judgment As A Matter Of Law, Or, In The Alternative, Motion For A New Trial.* (Doc. # 120) filed October 1, 1998, be and hereby is OVERRULED.

*Matter of Law, Or, In The Alternative, Motion For A New Trial,* Doc. # 121, p. 18. This is the only reference to the net worth issue in defendant's

initial memorandum. In its reply brief, defendant expands briefly upon this argument.