**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joseph CUSMANO, Defendant-Appellant.**

**No. 82–1666.**

United States Court of Appeals,
Sixth Circuit.

Submitted Dec. 2, 1983.

Decided March 2, 1984.

Certiorari Denied June 18, 1984.
See 104 S.Ct. 3536.

Neil H. Fink, Detroit, Mich., for defendant-appellant.

Leonard R. Gilman, U.S. Atty., John C. Newcomer, Detroit, Mich., for plaintiff-appellee.

Before LIVELY, Chief Judge, MARTIN, Circuit Judge, and PHILLIPS, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Joseph Cusmano, appeals his conviction for violation of the Hobbs Act, 18 U.S.C. § 1951. Cusmano was charged in a two-count indictment with obstructing, delaying and affecting commerce by extortion in violation of 18 U.S.C. § 1951 (Count 2) and with conspiracy to violate 18 U.S.C. § 1951 (Count 1).[1] A jury returned a verdict of guilty on both counts.[2]

On appeal, Cusmano argues the conduct charged in the indictment and proven at trial fails to establish a violation of 18 U.S.C. § 1951 because the Hobbs Act does not apply to activities between an employer and employee engaged in discussions concerning a labor dispute over the terms and conditions of employment. He also contends there was insufficient evidence to support his conviction, prejudicial collateral evidence was needlessly admitted at trial, and prosecutorial misconduct deprived him of a fair trial. Because we find no error below, we affirm.

The facts and background of this case have already been set forth in two previous decisions of this court. *United States v. Cusmano I, supra; United States v. Russo*, 708 F.2d 209 (6th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 487, 78 L.Ed.2d 682 (1983). On this appeal, we note that Cusmano and codefendant James Russo were the co-owners of J & J Cartage Company, a trucking firm engaged in the transportation of steel. Cusmano, along

---

1. The Hobbs Act provides in pertinent part:
   (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.
   (b) As used in this section—
   \* \* \* \* \* \*

   (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

2. Cusmano's first conviction, based on the same conduct at issue here, was reversed because certain evidence admitted at trial, together with the trial court's instructions to the jury, constituted a constructive amendment of the indictment. *United States v. Cusmano I*, 659 F.2d 714 (6th Cir.1981).

with the other codefendants,[3] allegedly coerced the drivers of J & J to pay the company's contributions to the Teamster Health and Welfare and Pension Funds by requiring them to sign a "11% agreement." The agreement authorized the company to deduct 11% from gross earnings, prior to computing the drivers' wages, and to use the deducted amount to pay employer contributions to the funds.

■ Cusmano asserts the 11% agreement was the result of legitimate labor negotiations between an employer and its employees, and cannot constitute a violation of the Hobbs Act. Relying on *United States v. Enmons*, 410 U.S. 396, 399, 93 S.Ct. 1007, 1009, 35 L.Ed.2d 379 (1973), which held that the Hobbs Act does not proscribe "violence committed during a lawful strike for the purpose of inducing an employer's agreement to legitimate collective-bargaining demands," Cusmano contends his conviction must be reversed because the objective behind the 11% agreement—the reduction of labor costs in the form of lower wages—was a legitimate labor objective and therefore was protective activity under *Enmons*. The United States, on the other hand, argues the 11% agreement constituted a wrongful means to achieve a wrongful objective, and thus violated the Hobbs Act.

We believe our earlier decisions in *Cusmano I* and *Russo* affirmatively resolved the issue of whether the Hobbs Act applies to the employer activity involved here. In *Russo* we held that J & J, which Cusmano was half owner of,

> had no legitimate claim to the 'service charge' of 11% of the gross earnings. This is true because the existing contracts expressly required the [c]ompany to make the payments to the welfare and pension funds out of the [c]ompany's own funds. Indeed, the contract provided that it would be 'unlawful and illegal' to deduct the welfare and pension payments from the [drivers'] gross earnings.

*Russo*, 708 F.2d at 215. Because J & J had no lawful claim to the 11% service charge, we held that the Hobbs Act could be utilized to proscribe the conduct of J & J's officers.

Cusmano argues, however, as did the dissent in *Russo*, that our conclusion on the applicability of the Hobbs Act directly conflicts with the Supreme Court's ruling in *United States v. Enmons, supra.* Cusmano's and the dissent in *Russo's* reliance on *Enmons* is misplaced. In *Enmons* the Supreme Court ruled that a union's violent activities during the course of a legitimate strike, were not proscribed by the Hobbs Act because the legislative history of the statute "makes it clear that the Act does not apply to the use of force to achieve legitimate labor ends." *Enmons*, 410 U.S. at 401, 93 S.Ct. at 1010. The Court noted, however, that the Hobbs Act would be properly applied in situations "where the obtaining of ... property would itself be 'wrongful' because the alleged extortionist has no lawful claim to that property." *Enmons*, 410 U.S. at 400, 93 S.Ct. at 1009. Applied in this manner, the Hobbs Act could be properly invoked where violence or force were utilized to obtain personal payoffs, *United States v. Iozza*, 420 F.2d 512, 515 (4th Cir.1970), *cert. denied*, 402 U.S. 943, 91 S.Ct. 1607, 29 L.Ed.2d 111 (1971), or where violence is used to secure payment for work which was unwanted or fictitious. *See United States v. Green*, 350 U.S. 415, 417, 76 S.Ct. 522, 524, 100 L.Ed. 494 (1956). Thus, the Hobbs Act presents no bar to prosecution where an accused is alleged to have extorted property to which he has no lawful claim.

Viewed in this light, Cusmano's activities in extracting the 11% agreement from J & J drivers was not protected conduct under the rule of *Enmons*. As an employer, or otherwise, Cusmano had no lawful claim to the money he received from the 11% agreement. As we carefully pointed out in *Russo*, the labor agreement between J & J and its drivers provided that it would be "un-

---

**3.** The convictions of codefendants James A. Russo, Vincent Meli, and Roby G. Smith were affirmed by this court in *United States v. Russo, supra.*

lawful and illegal" for J & J to deduct the welfare and pension payments from the drivers' gross earnings. Moreover, the 11% agreement was not the result of any collective bargaining between J & J and the union, but instead was secured through the coercive tactics of Cusmano and his codefendants. *Russo*, 708 F.2d at 215.

We believe Cusmano's attempt to characterize his behavior as protected labor activity stretches *Enmons* too far. He claims he had a legal right to bargain with his employees in an attempt to reduce J & J's labor costs. Although he might have this right, the facts proven at trial do not establish any legitimate bargaining by Cusmano in an attempt to reduce J & J's labor costs. Instead, the evidence discloses that he and his codefendants coerced the J & J drivers into an illegal agreement which required the drivers to pay for pension contributions which Cusmano should have paid. The facts demonstrate Cusmano attempted to obtain by wrongful means and under the guise of a "service charge" an objective which the parties' own contract specifically declared "unlawful and illegal." *Russo*, 708 F.2d at 216 (concurring opinion). This conduct went beyond legitimate labor tactics and violated the Hobbs Act. *Cf. United States v. Provenzano*, 334 F.2d 678, 693 (3d Cir.1964), *cert. denied*, 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544 (1964); *see also United States v. Iozza, supra*, 420 F.2d at 515. Applying Cusmano's interpretation of 18 U.S.C. § 1951, the Hobbs Act would pose no bar against the utilization of sham agreements, even though such agreements were obtained outside the traditional labor/management bargaining context. We decline to adopt such a restricted view and believe that *Enmons* provides no sanction for the activities proven here.

■ Cusmano further contends prejudicial collateral evidence was needlessly admitted at trial. First, he complains that the district court improperly allowed the government to introduce evidence regarding the bankruptcy proceedings of J & J. Cusmano argues this evidence was irrelevant and unduly prejudicial as evidence of another crime extraneous to the charges against him. The government asserts this evidence was properly admitted under Fed. R.Evid. 608(b) to impeach the credibility of Cusmano. We find the district court did not abuse its discretion in admitting this evidence for purposes of impeachment. Throughout the direct examination, Cusmano testified about the close business relationship he had with his employees. He also testified extensively about the economic collapse of J & J Cartage Company. In light of this testimony, the United States was in a proper posture to challenge the credibility of Cusmano. This challenge took the form of proof of how he was able to eventually transfer all the assets of J & J to his own personal account, leaving the trucking firm with no assets. Thus, the evidence of J & J's bankrupt proceedings was properly admitted.

■ Cusmano claims further the district court erred when it permitted the Assistant United States Attorney to secure from him an admission that he had physically assaulted a tow truck driver in charge of towing one of J & J's trucks to a Michigan State Police truckyard in Roseville, Michigan. On direct examination Cusmano stated he had "never threatened anyone in my life including my drivers who were my friends or intended to be." Cusmano now claims he made this statement in the context of economic threats to his employees. While this remark may have been limited, the broad nature of the comment, considered together with Cusmano's other testimony, could certainly have suggested that Cusmano had never threatened anyone. Therefore, it was properly allowed as evidence rebutting Cusmano's direct testimony. *See* Fed.R.Evid. 608(b).

■ He also asserts the district court erred when it permitted the United States to introduce evidence regarding the reputation of codefendant Vincent Meli. As we noted in *Russo*, 708 F.2d at 208, this evidence was admitted solely for the purpose of showing the state of mind of the victims of the alleged extortion at the time they consented to the 11% agreement. We find

no abuse of discretion in the admission of this evidence.

■ Finally, Cusmano contends prosecutorial misconduct deprived him of a fair trial. In support of this contention Cusmano claims the Assistant United States Attorney repeatedly sought to introduce prejudicial evidence and constantly attempted to humiliate him. We see no support for this claim. In *United States v. Leon,* 534 F.2d 667, 679 (6th Cir.1976), we noted we must

> consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they were isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proofs introduced to establish the guilt of the accused.

Cusmano has failed to meet this test. The record contains sufficient evidence to support the convictions reached below. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Leon,* 534 F.2d 667, 676 (6th Cir.1976).

The judgment of the district court is affirmed.