2014 COA 64

**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

**v.**

**Noah Ray THOMAS, Defendant–
Appellant.**

**Court of Appeals No. 11 CA 1071**

Colorado Court of Appeals,
Division III.

Announced May 22, 2014

John W. Suthers, Attorney General, Jacob R. Lofgren, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Douglas K. Wilson, Colorado State Public Defender, Joseph P. Hough, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE TERRY

¶ 1 Defendant, Noah Ray Thomas, appeals the judgment of conviction entered on a jury verdict finding him guilty of one count of vehicular homicide and five counts of vehicular assault. We affirm.

¶ 2 As an issue of first impression in Colorado, we conclude in Part V. C of this opinion that, under the doctrine of specific contradiction, CRE 608(b) is not an impediment to admission of evidence that specifically contradicts testimony of a witness on direct or redirect examination.

## I. Background

¶ 3 A single vehicle crash resulted in the death of one passenger and significant injuries to five other passengers.

¶ 4 On the night of the crash, defendant, his brother, and their friends were drinking and socializing at a bar. During the course of the night, defendant met two women, H.F. and J.L., and the women joined defendant and his friends. The group became heavily intoxicated. After the bar closed, defendant, his brother, the two women, and four others got into a sport utility vehicle (SUV) to travel to defendant's house so that they could continue the party there.

¶ 5 The prosecution presented evidence that defendant was the driver and missed a critical turn, resulting in the SUV crashing. Defendant and his brother got out of the vehicle, leaving five injured passengers and one dead passenger behind. The two brothers walked about a half mile to defendant's home, where defendant told his mother about the accident. Defendant's mother called a tow truck company. Neither defendant nor his family members contacted police or medical personnel.

¶ 6 Although H.F. testified that defendant was driving at the time of the crash, defendant testified that H.F. was the driver.

¶ 7 Defendant's first trial resulted in a hung jury. The jury in the second trial found him guilty, and the court sentenced him to twelve years in the Department of Corrections.

## II. Challenge to Prospective Juror

¶ 8 Defendant first contends that the trial court erred in granting the prosecution's challenge for cause to a prospective juror. According to defendant, this error in effect gave the prosecution an additional peremptory challenge, and an unfair tactical advantage over defendant in shaping the jury; prejudice to defendant is presumed; and reversal of the conviction is therefore required under *People v. Lefebre,* 5 P.3d 295, 303–04 (Colo. 2000), overruled by *People v. Novotny,* 2014 CO 18, 320 P.3d 1194. We discern no reversible error.

¶ 9 Under section 13–71–121, C.R.S. 2013, a trial court may excuse a person from jury service for a trial that is expected to last more than three trial days "upon a finding of hardship or inconvenience, taking into account the expected length of the trial." We review for an abuse of discretion a trial court's decision whether to excuse a juror for cause based on hardship under that statute. *People v. Isom,* 140 P.3d 100, 103 (Colo.App. 2005).

¶ 10 Here, the prospective juror was seventy years old. He said that he was feeling "a little shaky" because he ran a paper route at nighttime and made other daytime deliveries. His wife had been diagnosed with leukemia, and he said that he would have to continue working because he had his wife "to worry about." His work schedule was "seven days a week, 365 days a year." He described his work schedule as follows: he gets "up at midnight, [goes] out until about 6:00 [a.m.], [sleeps] for two [hours], [goes] all over the Denver area[, ... goes] home and sleep[s] for three [hours], and then [he is] at it again." When asked whether it would be a hardship for him to serve on the jury for this trial, which was scheduled to last about two weeks, he said, "I'm torn between wanting to do [my] duty and the emotional ... upheaval that comes from the personal end." He went on to discuss issues involving a family member who, he believed, had been wrongly convicted of a crime.

¶ 11 The prosecutor challenged the prospective juror for cause based on "hardship as far as time," as well as emotional hardship. The trial court granted the motion based on the prospective juror's work schedule.

¶ 12 Even though bias was not the ground for the prosecutor's challenge to the juror, on appeal, defendant primarily asserts that the juror was not properly susceptible to a challenge for cause based on bias in connection with his family member's criminal conviction. He further argues that the juror did not represent that he would suffer "actual hardship" as a result of his jury service.

¶ 13 Because the record regarding the potential juror's work and sleep schedule, and his family situation, supports the court's dismissal of the prospective juror under section 13–71–121 based on hardship, we conclude that the court did not abuse its discretion in dismissing the juror on that ground.

## III. Admission of J.L.'s Statements

¶ 14 Defendant argues that the trial court erred by admitting, as prior inconsistent statements and statements of identification, J.L.'s statements to other witnesses, indicating that defendant was the driver during the crash. We perceive no error.

### A. Standard of Review

¶ 15 We will not disturb a trial court's evidentiary rulings absent a showing of an abuse of discretion. *See Davis v. People,* 2013 CO 57, ¶ 13, 310 P.3d 58, 61–62 (trial courts have considerable discretion to determine admissibility of evidence). A court abuses its discretion when its ruling (1) is based on an erroneous understanding or application of the law or (2) is manifestly arbitrary, unreasonable, or unfair. *People v. Esparza–Treto,* 282 P.3d 471, 480 (Colo.App. 2011).

¶ 16 Where a defendant objects to the admission of evidence, we review for harmless error. *People v. Garcia,* 28 P.3d 340, 344 (Colo.2001). Under this standard, even if there is error, reversal is not required unless the error affects the substantial rights of the accused. *See Yusem v. People,* 210 P.3d 458, 469 (Colo.2009).

¶ 17 An error of nonconstitutional dimension is prejudicial where there is a reason-

able probability that it contributed to a defendant's conviction by substantially influencing the verdict or impairing the fairness of the trial. *People v. Casias,* 2012 COA 117, ¶ 61, 312 P.3d 208, 220. Where there is no reasonable probability that such an error contributed to a defendant's conviction, the error will be disregarded as harmless. *Id.*

### B. Analysis

¶ 18 Defendant argues that J.L.'s prior inconsistent statements were not properly admitted because the foundational requirements of section 16–10–201(1), C.R.S.2013, were not met. We disagree.

¶ 19 Section 16–10–201(1) permits the use of a prior inconsistent statement to prove the truth of the matter asserted therein, so long as the statutory foundational requirements for substantive admissibility have been satisfied. *Montoya v. People,* 740 P.2d 992, 998 (Colo.1987). A prior inconsistent statement is admissible to impeach a witness's testimony and to establish a fact if the witness (1) was given an opportunity, when testifying, to explain or deny the statement; or (2) is still available to give further testimony in the trial. § 16–10–201(1)(a).

¶ 20 Here, the prosecution satisfied the foundational requirements of section 16–10–201(1)(a) in presenting J.L.'s prior statements. J.L. testified at trial that she could not recall any of the events surrounding the crash and could not recall her prior answers to questions about who was the driver. Her testimony that she could not recall her prior statements amounted to a denial that she had made them, and satisfied the requirement for inconsistency. *People v. Candelaria,* 107 P.3d 1080, 1086 (Colo.App.2004), *rev'd on other grounds,* 148 P.3d 178 (Colo.2006); *People v. Baca,* 633 P.2d 528, 529 (Colo.App.1981). Because her prior statements were inconsistent with her trial testimony and she was still available to testify at trial, the trial court did not abuse its discretion in admitting J.L.'s prior inconsistent statements for the purpose of proving who was driving the vehicle at the time of the crash.

¶ 21 Because J.L. was present at trial and defendant was given an opportunity to cross-examine her, we also reject defendant's argument that the admission of J.L.'s prior statements violated his rights under the Confrontation Clause of the United States Constitution, U.S. Const. amend. VI. *See People v. Argomaniz–Ramirez,* 102 P.3d 1015, 1018 (Colo.2004).

¶ 22 Given our resolution of this issue, we need not address defendant's further contention that the trial court erroneously admitted J.L.'s prior statements under CRE 801(d)(1)(C).

### IV.   Evidence of Silence

¶ 23 Defendant next contends that the trial court erred by admitting evidence of his silence in response to an accusation that he was the driver. He argues that admission of evidence of his silence violated his constitutional right to silence under the Fifth Amendment. He also contends that his silence in response to the accusation did not meet the threshold of manifesting an adoption of belief in its truth, and therefore evidence of his silence was not properly admitted as an adoptive admission under CRE 801(d)(2)(B). We conclude that the trial court did not err in admitting the evidence.

### A.   Right Against Self–Incrimination

¶ 24 We first consider and reject defendant's contention that the admission of evidence of his silence violated his right against self-incrimination.

¶ 25 No person shall be compelled in any criminal case to be a witness against himself. U.S. Const. amend. V; Colo. Const. art. II, § 18. This right necessarily includes an accused person's right to remain silent. *People v. Taylor,* 159 P.3d 730, 735 (Colo. App.2006). However, the Fifth Amendment protections do not apply to conduct that occurs in a noncustodial setting. *Salinas v. Texas,* —— U.S. ——, 133 S.Ct. 2174, 2180, 186 L.Ed.2d 376 (2013); *People v. Richardson,* 58 P.3d 1039, 1046 (Colo.App.2002) (the defendant's constitutional rights were not violated by the prosecution's reference to the defendant's silence because at the time of the

referenced silence, the defendant was not in custody and was not being interrogated); *see also Taylor,* 159 P.3d at 736 (no due process violation results when a defendant is cross-examined about pre-advisement silence, because in such circumstances it cannot be said that the government has induced the defendant's silence).

¶ 26 Thus, contrary to defendant's contention, admission of his silence did not violate his constitutional right against self-incrimination because his silence did not occur during a custodial interrogation.

### B. Adoptive Admission

¶ 27 The trial court permitted testimony to be given about defendant's silence in response to an accusation that he was the driver of the vehicle involved in the crash. The court reasoned that this was evidence of an adoptive admission. We reject defendant's assertion that the court's ruling was in error.

¶ 28 Three days after the crash, defendant and his mother went to the hospital to visit J.T., one of the victims who sustained a severe brain injury in the crash. They encountered J.T.'s mother, who was cordial and friendly during the conversation, and asked defendant to acknowledge that he was the driver of the vehicle involved in the crash. J.T.'s mother testified that J.T. and defendant had been best friends for years. She said,

> I was so thrilled to see [defendant] alive, all put together. I ran up to him. Well, [I] had to chase him down. I ran up to him and, you know, of course I checked him all out, and then I grabbed ahold of him and hugged him. And he kept on saying, "Oh, I'm so sorry, I'm so sorry." And [defendant's mother] was saying how sorry she was and there was no insurance to cover all this [sic].
>
> . . .
>
> And . . . I gave [defendant] my little motherly speech and he kept on apologizing and [his mother] was apologizing and saying, "[T]here [is] no insurance[,] and what does [J.T.] know, what does [J.T.] know." And it was like, "What does [J.T.] know?" Who

knows what [J.T.] knows. I mean, at that point it was like, you know, is [J.T.] going to survive? It wasn't like [J.T. is] going to tell you who was driving. It was like, "[C]ome on. You know, admit it. Everybody knows who was driving. Come on, just tell me." And [his mother] elbowed [defendant] in the stomach.

> . . .
>
> I was looking at [defendant] in his face because I really I didn't know [his mother] and I know [defendant]. And I was just kind of sympathizing with him. And you know, just carrying on like we always did. I mean, we always had good conversation. So it was like, "Just admit it. It would be better for you in the long run. I mean, mentally better for you." And [his mother], you know, stuck her elbow in his gut, pushed him back, and I know [defendant] was going to talk to me. He was going to say something. She stopped him dead in his tracks and said, "Let's talk about something else. Let's talk about what does [J.T.] know."

¶ 29 Defense counsel moved to strike the adoptive admission aspect of the witness's testimony, arguing that defendant "would [have been] under an extreme emotional impediment under [the] circumstances" to object to the witness's accusation. The court addressed this argument and found,

> the [witness's] testimony in addition to the description provided by [the prosecutor] in his summary [i.e., that J.T.'s mother was happy to see defendant, she hugged him, and she was happy to see that he was healthy], also included the fact that [defendant] was about to respond, and . . . his failure to follow through with that response *was not due to some sort of emotional pressure that he was feeling in that situation,* but rather it was due to the fact that his mother was elbowing him in the side to get him to stop responding and that it was her effort to refocus the conversation on what [J.T.] knew about the accident or what [J.T.] was able to remember at that time.

(Emphasis added.)

¶ 30 An incriminating statement uttered by a third party in the presence of a defendant

is deemed not to be hearsay, and therefore admissible against the defendant, when the evidence establishes that the defendant demonstrated his or her adoption of the statement or belief in its truth. *See People v. Green*, 629 P.2d 1098, 1100 (Colo.App.1981). In some situations, a failure to deny an accusation, when the statement is heard and understood by an accused and could have been denied by him without emotional or physical impediment, is admissible as an adoptive admission. *People v. Quintana*, 665 P.2d 605, 610 (Colo.1983).

¶ 31 Adoptive admissions are particularly troublesome in criminal cases because of constitutional constraints against inferences to be made from a defendant's silence. *People v. Sweeney*, 78 P.3d 1133, 1135 (Colo.App. 2003). However, in a noncustodial setting, silence in the face of an accusation of wrongdoing gains probative weight when it occurs in circumstances where the silent party could be expected to disagree with the statement. *Id.*; *see also* 2 Kenneth S. Broun, *McCormick on Evidence* § 262 (7th ed.2013) (when a statement is made in the presence of a party and the statement contains assertions of facts which, if untrue, the party would under all the circumstances naturally be expected to deny, failure to speak has traditionally been received as an admission). The failure to assert a fact under circumstances in which it would have been normal to assert it has been construed to be the equivalent of a statement of the nonexistence of the fact. *Quintana*, 665 P.2d at 610.

█ ¶ 32 Underlying the adoptive admission exemption from general hearsay concepts is the assumption that it would be reasonable to expect any person who hears a statement accusing him or her of misconduct to deny such a statement. *Green*, 629 P.2d at 1100. In determining whether a defendant has adopted another's incriminating statement, a trial court should consider whether (1) the statement is such that an innocent defendant would normally be induced to respond; (2) the defendant heard and understood the statement made in his presence; and (3) he could have denied or objected to the statement without emotional or physical impediment. *Sweeney*, 78 P.3d at

1135. In addition to the factors evaluated in *Sweeney*, to determine whether a defendant has adopted an accusation, "the essential inquiry in each case is whether a reasonable person under the circumstances would have denied the statement." *McCormick on Evidence*, § 262.

█ ¶ 33 Defendant contends that the trial court erred because it did not evaluate the *Sweeney* factors before admitting evidence of defendant's silence, and that none of those factors weighs in the prosecution's favor. Our review of the record shows that the trial court properly considered the circumstances under which defendant was accused and remained silent in response, and that there was no error in admission of the testimony about his silence.

¶ 34 Under the circumstances, defendant would have been expected to disagree with, or object to, the statement accusing him of being the driver, especially in light of: his knowledge that he was suspected of being the driver; the facts that one passenger was dead and most of the others were severely injured, and that the conversation with J.T.'s mother occurred only three days after the crash; his prior comments that he was sorry; and his appearance of being about to respond to the accusation.

¶ 35 At the time, defendant was twenty-three years old, and his mother had no legal right to control his behavior. Her apparent desire to keep him from responding to the accusation was not the sort of emotional or physical impediment to deny the accusation that would have required the trial court to exclude the evidence. *Cf. Green*, 629 P.2d at 1100 (the defendant was not free from emotional impediments to an immediate response where he knew that his wife had a gun, a heated domestic dispute over another woman was in progress, and his wife had threatened him with violence minutes before).

¶ 36 Accordingly, the trial court did not abuse its discretion in admitting evidence of defendant's silence as an adoptive admission.

### V. Statements Regarding Employment Status

¶ 37 Defendant testified at trial. On cross-examination, he admitted that he had been

planning to tell the court before trial that he had a job, even though he did not have one, so that he could get a bond reduction. On redirect examination, when asked about that testimony, defendant stated, "I assumed that I still had my position. That's my best outlook on it was that I still ... maintained my employment. I didn't know whether or not I had my job.... I had no word of termination or anything so I assumed that I had my position." In rebuttal, over defendant's objection, the court allowed the prosecution to play the audiotape of defendant's phone conversation where he told his mother of his intent to—in his words—"lie" to the court about his employment.

¶ 38 Defendant asserts that the trial court erred by allowing the prosecution to cross-examine him about his stated intent to deceive the court regarding his employment status, and by admitting the audiotape in rebuttal. According to defendant, the trial court's admission of this evidence violated CRE 404(b) and CRE 608(b). We disagree.

### A. CRE 404(b) is Inapplicable

¶ 39 Initially, we reject defendant's contention that this issue implicates CRE 404(b). Both CRE 404(b) and CRE 608(b) permit admission of evidence that would otherwise be considered inadmissible character evidence for limited purposes. *People v. Segovia*, 196 P.3d 1126, 1130–31 (Colo.2008). CRE 608(b) governs evidence used to impeach a witness's credibility. *Segovia*, 196 P.3d at 1131. Thus, evidence of specific acts used solely for impeachment is governed by CRE 608(b), rather than by CRE 404(b). *Segovia*, 196 P.3d at 1131.

### B. CRE 608(b) Did Not Preclude Cross-Examination on This Topic

¶ 40 Specific instances of conduct intended to impeach the credibility of a witness may be inquired into on cross-examination of the witness. CRE 608(b); *see also Segovia*, 196 P.3d at 1130. When defendant took the stand, he put his credibility in issue. *See Segovia*, 196 P.3d at 1130. Thus, CRE 608(b) allowed the prosecutor to impeach defendant's credibility by asking questions about specific instances of conduct that were probative of his character for truthfulness or untruthfulness, including his stated intent to deceive the trial court about his employment status. *Segovia*, 196 P.3d at 1130.

### C. Under the Doctrine of Specific Contradiction, Extrinsic Evidence of Defendant's Intent to Deceive Was Admissible in Rebuttal

¶ 41 We next reject defendant's contention that the trial court erred in permitting the prosecution to present extrinsic evidence, in the form of testimony introducing the audiotape, and the audiotape itself, as rebuttal.

¶ 42 CRE 608(b) precludes the admission of extrinsic evidence of specific instances of conduct of the witness when offered for the purpose of attacking or supporting the witness's character for truthfulness.

¶ 43 However, as we discuss more fully below, it is well established that evidence may be introduced that specifically contradicts a defendant's direct testimony. We conclude that the doctrine of specific contradiction allowed this evidence to be introduced here, and that CRE 608(b) is no impediment to the introduction of such evidence.

¶ 44 The doctrine is best illustrated by Justice Frankfurter's opinion in *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). In 1950, the defendant there was indicted for possessing one grain of heroin. After the trial court suppressed evidence of the heroin as having been obtained through an unlawful search and seizure, the case against the defendant was dismissed. The case before the Court was an appeal of a second narcotics prosecution. The defendant testified, and, on direct examination, denied that he had ever possessed narcotics. He reiterated that assertion on cross-examination. When asked on cross-examination about the grain of heroin previously seized from his home, he denied that any narcotics had been taken from him. The prosecution presented rebuttal testimony of the officers who had seized the heroin, and the chemist who had tested it. The trial court admitted the evidence solely for the purpose of impeaching the defendant's credibility, and so instructed the jury. *Id.* at 63–

64, 74 S.Ct. 354. In concluding that the government could offer such evidence to contradict the defendant's testimony, the Court said, "there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility." *Id.* at 65, 74 S.Ct. 354.

¶ 45 Because Fed.R.Evid. 608(b) was not in effect when *Walder* was decided, the case did not mention that rule. However, subsequent federal cases discussing Fed.R.Evid. 608(b) have also followed the specific contradiction doctrine.

¶ 46 Because CRE 608(b) is based on Fed. R.Evid. 608(b), we may look to federal precedent interpreting the federal rule in construing our own rule. *Stewart ex rel. Stewart v. Rice,* 47 P.3d 316, 321 (Colo.2002).

¶ 47 CRE 608(b) closely resembles the 2003 amendments to Fed.R.Evid. 608. Those amendments were made

> to clarify that the absolute prohibition on extrinsic evidence applies only when the sole reason for proffering that evidence is to attack or support the witness'[s] character for truthfulness.... The amendment conforms the language of the Rule to its original intent, which was *to impose an absolute bar on extrinsic evidence only if the sole purpose for offering the evidence was to prove the witness'[s] character for veracity....  [T]he amendment leaves the admissibility of extrinsic evidence offered for other grounds of impeachment (such as contradiction) ... to [Fed.R.Evid.] 402 and 403.*

Fed.R.Evid. 608 advisory committee's notes (2003 amendments) (emphasis added) (citing *United States v. Winchenbach,* 197 F.3d 548, 557–58 (1st Cir.1999) (admissibility of a prior inconsistent statement offered for impeachment is not governed by Fed.R.Evid. 608(b))).

¶ 48 Though Fed.R.Evid. 608(b) was further amended in 2011, and the provisions of that rule are no longer nearly identical to those of CRE 608(b), the advisory committee notes to the rule clarify that the 2011 rewording of the federal rule was merely stylistic, and that there was "no intent to change

any result in any ruling on evidence admissibility" as a result of the rewording. Fed. R.Evid. 608 advisory committee's notes (2011 amendments).

¶ 49 The specific contradiction doctrine is described in Charles Alan Wright, Kenneth W. Graham, Jr., Victor James Gold & Michael H. Graham, *Federal Practice & Procedure, Federal Rules of Evidence* § 6096 (2d ed. 2014):

> Testimony on direct by a defendant in a criminal case can open the door to admission of extrinsic evidence to contradict even though the contradictory evidence is otherwise inadmissible and, thus, collateral. For example, if defendant on direct denies committing prior bad acts, the defendant may be contradicted with extrinsic evidence of such acts *even though that evidence would be inadmissible to prove conduct under Rule 404 or character for truthfulness under Rule 608(b).* This open-door approach has been justified on the ground that the defendant should not be permitted to engage in perjury, mislead the trier of fact, and then shield herself from impeachment by asserting the collateral matter doctrine.

(Emphasis added; footnotes omitted.)

¶ 50 The doctrine has been applied in numerous federal cases, and particularly in the Tenth Circuit, and courts in those cases have held that Fed.R.Evid. 608(b) does not preclude application of the doctrine. *See, e.g., United States v. Crockett,* 435 F.3d 1305, 1313 (10th Cir.2006); *United States v. Fleming,* 19 F.3d 1325, 1331 (10th Cir.1994); *United States v. Greschner,* 802 F.2d 373, 383 (10th Cir.1986); *United States v. Cusmano,* 729 F.2d 380, 383 (6th Cir.1984).

¶ 51 We conclude that the doctrine of specific contradiction is consistent with Colorado precedent. In *People v. Cole,* 654 P.2d 830 (Colo.1982), the prosecution appealed a judgment in favor of the defendant, as permitted under section 16–12–102(1), C.R.S.2013. The police had been called to the scene of a fight between the defendant and another man, Leon McCoy. When an officer was patting down the defendant for weapons, the defendant allegedly pulled a machete from his clothing and used it to cut the officer's hand.

The defendant was charged with assaulting the officer. *Id.* at 831.

¶ 52 When the defendant testified at trial, he denied that he had used a knife in the fight with McCoy. The prosecution sought to present rebuttal testimony from McCoy that defendant had been the aggressor in the fight and had stabbed McCoy in the arm. The supreme court held that the defendant's testimony had opened the door to the issue of his prior fight, and allowed the prosecution to present rebuttal testimony from McCoy to explain, refute, or disprove the defendant's testimony, because the defendant's credibility was at issue. *Id.* at 834. The court reasoned that, by his testimony, the defendant had "subjected himself to the risk of potentially prejudicial rebuttal." *Id.* Although the admission of rebuttal testimony "is in large part a discretionary function of the trial court," the supreme court held that the exclusion of McCoy's testimony "constituted an abuse of discretion." *Id.*

¶ 53 *Cole* does not discuss how CRE 608(b) might affect its rationale, because the rule was enacted after the trial in that case. *Id.* at 832 n.2. However, we conclude that, under Colorado law, the doctrine of specific contradiction is to be applied without regard to the evidence rule, as it is in the federal courts.

¶ 54 Our conclusion is consistent with other Colorado cases involving a defendant's opening the door to rebuttal evidence. *See People v. Renfro,* 117 P.3d 43, 46 (Colo.App.2004) ("Although bolstering testimony is normally inadmissible, where the defense on cross-examination creates the impression that an investigation was less than thorough, the defense has opened the door and the prosecution should be allowed the opportunity to dispel that impression."); *see also People v. Tenorio,* 197 Colo. 137, 145–46, 590 P.2d 952, 958 (1979) (where the defense opened the door to a topic in its cross-examination of a prosecution witness, the prosecution had a right to explain or rebut any adverse inferences that might have resulted from the cross-examination question).

¶ 55 We note that the federal authorities discuss the specific contradiction doctrine in the context of the ability of the prosecution to present rebuttal evidence to contradict a defendant's testimony on *direct* examination. *See, e.g., United States v. Magallanez,* 408 F.3d 672, 680–81 (10th Cir.2005) ("Rule 608(b) does not apply 'when extrinsic evidence is used to show that a statement made by a defendant on direct examination is false. . . . A defendant may not make false statements on direct examination and rely on the government's inability to challenge his credibility as to the truth of those statements.' " (quoting *United States v. Fleming,* 19 F.3d 1325, 1331 (10th Cir.1994))). Here, the rebuttal evidence was offered to contradict defendant's testimony on *redirect* examination. We think the same principles should apply to allow the prosecution to present rebuttal evidence to contradict testimony first offered on redirect examination.

¶ 56 By making statements on redirect examination that contradicted his testimony during cross-examination, defendant here opened the door to the extrinsic evidence to contradict his statements on cross-examination. Accordingly, the trial court did not err by allowing the prosecution to present extrinsic evidence in the form of defendant's audiotaped statement to rebut his testimony.

### D. Limiting Instruction

¶ 57 We further reject defendant's contention that the trial court erred by failing, sua sponte, to give a limiting instruction with respect to his audiotaped statement.

¶ 58 As a general rule, defense counsel is charged with the task of deciding whether a limiting instruction is desirable. *See* CRE 105 (court must give a limiting instruction "upon request"); *People v. Gladney,* 194 Colo. 68, 72, 570 P.2d 231, 234 (1977) (for strategic or tactical reasons, defense counsel may consider a limiting instruction more harmful than beneficial). Absent a special statutory requirement, a trial court is under no obligation to provide a limiting instruction without a defendant's request that it do so. *People v. Griffin,* 224 P.3d 292, 298 (Colo.App.2009).

¶ 59 Here, defendant did not request a limiting instruction, and we discern no error

in the lack of such an instruction with respect to this evidence.

### VI. Cumulative Error

¶ 60 Finally, defendant contends that the cumulative effect of the errors in this case warrants reversal. We are not persuaded.

[16, 17] ¶ 61 To warrant reversal of a conviction based on cumulative error, "numerous errors [must] be committed, not merely alleged." *People v. Whitman,* 205 P.3d 371, 387 (Colo.App.2007). And, "[a] conviction will not be reversed if the cumulative effect of any errors did not substantially prejudice the defendant's right to a fair trial." *Id.*

¶ 62 Because we discern no errors by the trial court, there are no grounds to reverse for cumulative error.

¶ 63 The judgment is affirmed.

JUDGE DAILEY and JUDGE MILLER concur.